599 A.2d 843

**James Edward GOROUM, Jr.**

v.

**Shirley Jean RYNARZEWSKI, Personal Representative of the Estate of James Edward Goroum, Sr.**

**No. 297, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Dec. 30, 1991.

Martin C. Dennis, Dunkirk, for appellant.

Mary M. Krug (Warren J. Krug and Handen and Krug, P.A., on the brief), Prince Frederick, for appellee.

Argued before CATHELL, MOTZ and HARRELL, JJ.

CATHELL, Judge.

James E. Goroum, Jr., appeals from the order of the Orphans' Court for Calvert County dismissing his petition to caveat and admitting to probate the will of James E. Goroum, Sr., appellant's father. He asserts that the dismissal was not appropriate because "the Will's attestation page was not affixed to the Will in the Testator's presence." He further contends that the resulting will was therefore invalid. We shall affirm the lower court. We explain.

On September 2, 1990, James E. Goroum, Sr., died. After being notified of his father's death, appellant questioned both the Register of Wills for Calvert County and the law office which represented the decedent during his lifetime in regard to the existence of a will. The two queries led to the same conclusion—no will existed. Based on the outcome of his investigation, appellant filed a petition for probate. The court granted letters of administration, naming appellant as the personal representative of his father's estate.

Subsequently, an attorney from the law office which formerly represented the decedent, believing that a will filed with the Register of Wills was placed in a sealed envelope with the wrong name, filed a petition for examination of the will in that envelope bearing the name James E. Goroum, III. The court granted this petition on October 2, 1990, and a will with the decedent's name was discovered in that envelope on that same date. Shirley Rynarzewski, appellee, thereafter petitioned the court to withdraw the letters of administration previously granted and to admit the newly found will to probate. Appellant filed his petition to caveat on November 14, 1990.

Appellee's counsel moved for summary judgment at the hearing held to determine the validity of the will on February 5, 1991. The court granted this motion and, among other things, dismissed appellant's petition and admitted the will to probate.

Pursuant to Maryland Rule 6–431(c)(5), appellant's petition to caveat was required to contain the grounds for challenging the validity of the will. The grounds enumerated in support of his petition included:

> 7. ... [T]he said document ... is not the Last Will and Testament of JAMES E. GOROUM, SR., for ... JAMES E. GOROUM, SR. was not legally competent to make a Will and, therefore, he died intestate.

> 8. ... [T]he alleged Will ... was procured by the exercise of undue influence upon him by SHIRLEY JEAN RYNARZEWSKI, and is, therefore, without legal effect.

> 9. ... [T]he individuals whose names are allegedly subscribed as witnesses thereon, were not visible by JAMES E. GOROUM, SR., when they placed their signature thereon.

Appellant did not allege as grounds in his petition the claim he now makes that the attestation page was not affixed to the will in the testator's presence.[1]

---

**1.** It is not at all clear that the issue has been preserved for appeal. During the argument on the motion for summary judgment, only two very vague references were made to this issue. Counsel stated, "[S]ince it was not on the same page and it has got to be affixed to the Will—I don't have them right handy. It has to be affixed to the Will or initialed or signed by the Testator." He further stated "that ... Barbie Eversfield Shields indicated that when the Will was signed that these papers were spread out. They were not affixed to each other." These statements are the sum total of appellant's attempt to raise the issue which he now seeks to have us review.

Maryland Rule 8–131(a) provides that "[o]rdinarily, the appellate court will not decide any other issue [other than subject matter or personal jurisdiction] unless it plainly appears by the record to have been raised in or decided by the trial court...." As we stated: "To adopt such a stance would amount to an encouragement for counsel to raise in this Court, for initial determination, matters which should be heard and determined in the first instance by the trial court." *Kohr v. State,* 40 Md.App. 92, 104, 388 A.2d 1242, *cert. denied,* 283 Md.

## The Facts

Mr. Sheridan, the partner of the attorney that drafted the will, testified that the will in question appeared to "be the original Will that was executed by James Edward Goroum, Sr." He testified that it was witnessed by Barbie Shields and Larry Bowlby, both of whom worked in Mr. Sheridan's office at the time the will was executed.

Mr. Sheridan testified that, in addition to the testator, he, Shields and Bowlby were all present when the will was executed; that it was signed in his conference room; that he saw the testator sign it; and, that Shields and Bowlby were present when the testator signed. Sheridan further testified that he called the witnesses together to explain to them and to the testator the "purposes" of the will's execution.

While Sheridan testified at length as to his general practice, he specifically recalled having the testator sign each page; not letting the testator use a signature stamp; letting him sign the preliminary pages by using his initials, J.E. Goroum, Sr., but requiring him to sign his full name on the last page because "that's the way it was in there." He remembered that he and the witnesses were "all sort of like a huddle around him" and they "all saw each other sign."

Ms. Shields testified that she, Sheridan, and Bowlby were present when Goroum, Sr., executed the will and observed the signing of the will being admitted to probate. She testified that she signed it in the testator's presence at his request. She was asked what Mr. Sheridan's instructions to the testator were and she said that she did not "remem-

---

735 (1978). The Court of Appeals has held that this rule directly applies to decisions from the orphans' court. In *Morgan v. Dietrich,* 178 Md. 66, 70–71, 12 A.2d 199 (1940), the Court stated: "This question was not passed on by the Orphans' Court, and will not be discussed here." *See also Carrier v. Crestar Bank,* 316 Md. 700, 725, 561 A.2d 227 (1989); *Zellinger v. CRC Dev. Corp.,* 281 Md. 614, 620, 380 A.2d 1064 (1977).

ber this one in particular." She then testified as to the general practice normally followed in that office.[2]

Mr. Bowlby testified that he was present when Goroum, Sr., signed his will, and that he, Bowlby, signed it in the testator's presence as did Ms. Shields. Mr. Bowlby further testified that after the will was drafted, but prior to the date of its execution, he had taken it "down to the car and gave it to him and actually read it to him.... And he said the Will was the way he wanted it."

It is clear that when the will was discovered in the Register of Wills office the attestation page was affixed to the will and that it was, when presented to the orphans' court, in full compliance with Md.Estates and Trusts Code Ann. § 4–101 *et seq.* (1991). The parties do not contend otherwise.

### The Law

■ Appellant's attorney argued to the court below that "Barbie Eversfield Shields indicated that when the Will was signed that these papers were spread out. They were not affixed to each other." On appeal, appellant's counsel argues: "It was there that the secretary [Shields] took the loose sheets ... stapled the original and copies together. This process of stapling, or affixing the sheets together was done in a separate room, not in the Testator's presence." Appellant then cites *Shane v. Wooley*, 138 Md. 75, 113 A. 652 (1921), for the proposition that the attestation page must be affixed to the will when the will is signed. He then concludes that the "testimony herein was [un]controverted that the attesting witness and secretary took the unaffixed ... pages ... into a separate room ... copied and affixed the ... pages ... outside of the Testator's view and presence."

---

**2.** She testified that the normal practice was that the sheets were not stapled together when wills were signed. This testimony gives rise to the issue appellant now raises on appeal.

The appellant's conclusion is based on a false premise. While it is true that there is no controverting evidence, it is also true that the testimony to be controverted does not exist in the first instance. No one testified that the attestation page of *this will* was at any time unaffixed. Appellant argues the evidence of the law firm's general way of doing things as if there was evidence that it was done that exact way in this specific instance. A law office's general practice to do things a certain way is not clear and convincing evidence that it was done that way in a specific instance. Simply put, there is *no* evidence that at the time the testator and witnesses executed this will, *its* pages were unaffixed.

Our review of Ms. Shields' testimony indicates that when asked whether the will was affixed, she responded in general terms "[t]hey're *usually* loose sheets...." (Emphasis added.) Though she was asked certain specific questions, *i.e.,* "Do you recall the specific time when Mr. Goroum signed," no additional attempts were made to elicit specific testimony about the affixation of the attestation pages to the will at issue. Appellant's attention plainly was not focused below on the affixation question he now raises.

The testimonial exchanges with Ms. Shields included:

Q. Do you recall what his [Sheridan's] instructions [to the testator] were?

A. Well, he always used general instructions. I don't remember this one in particular....

Q. What's he normally do?

A. He goes over the Will with the people and then he asks the secretaries ... to come in and witness it.

\* \* \* \* \* \*

Q. Do you recall Mr. Goroum, Sr.'s demeanor that day or actions? Do you have any specific recollection of it?

A. Not really.

\* \* \* \* \* \*

Q. Do you recall that you gave Mr. Goroum, Sr. copies of the Will?

A. We usually give everybody copies of their Will.

\* \* \* \* \* \*

Q. Do you happen to recall where the witnesses were seated or standing, or the clients?

A. Usually like ...

\* \* \* \* \* \*

A. Usually we would stand around.

Q. You don't recall specifically at this time?

A. No.

The sum total of Ms. Shields' testimony was a description of the general practices of the law firm. She had no specific recollection of the manner of the execution of the will at issue.

The facts in *Shane* are inapposite to those in the case at bar. In the case *sub judice,* the will when discovered in the register's office and when presented to the orphans' court, was regular on its face—the attestation page was affixed.[3] The testamentary document in *Shane* was irregular in that its attestation was not affixed but written on the outside of an envelope in which the will was contained. The Court opined: "[T]he weight of authority, however, appears to be that the witnesses must sign ... the same sheet ... or on some sheet physically connected with it...." *Shane,* 138 Md. at 78, 113 A. 652. In *Shane,* the will as presented was not valid and thus there was no *prima facie* validity. The Court, therefore, did not consider, or even discuss, whether clear and convincing evidence existed to overcome the presumption of validity. The will in *Shane* was clearly invalid; in the case at bar the will is presumed to be valid. *O'Neal v. Jennings,* 53 Md.App. 604, 608, 455 A.2d 66 (1983) (attestation clause raises a *prima facie* presumption that the will was duly executed). *See also Cornelius v. Crosby,* 243 Ga. 26, 252 S.E.2d 455 (1979) (proper attestation clause raises

---

**3.** The impropriety of the attestation clause was raised in the Petition to Caveat in *Shane.* It was not raised in the Caveat Petition in the present case.

the presumption of legal execution); *In re Estate of Chlebos*, 194 Ill.App.3d 46, 141 Ill.Dec. 23, 550 N.E.2d 1069 (1990) (document containing attestation clause presents *prima facie* case favoring due execution of the will); *In re Estate of Flider*, 213 Neb. 153, 328 N.W.2d 197 (1982) (presence of attestation clause which recites facts necessary to the validity of a will raises presumption of due execution); *Matter of Estate of Papineau*, 396 N.W.2d 735 (N.D.1986) (unless overcome by clear and convincing testimony, the recitals in the attestation clause establish the will was duly executed); *Williams v. Overton*, 76 Or.App. 424, 709 P.2d 1115 (1985), *review denied*, 300 Or. 563, 715 P.2d 95 (1986) (presence of attestation clause creates presumption of due execution which may be overcome only by clear and convincing evidence); *Calhoun v. Calhoun*, 277 S.C. 527, 290 S.E.2d 415 (1982) (when formal execution of a will is admitted, *prima facie* case in favor of the will is made out); *Matter of Estate of Sensenbrenner*, 89 Wis.2d 677, 278 N.W.2d 887 (1979) (will's validity presumed with proof that will has been duly executed).

The evidence was clear in the case at bar that the testator initialed and signed each and every page of his will, except the attestation page, in the presence of the witnesses. The Court in *Van Meter v. Van Meter*, 183 Md. 614, 618, 39 A.2d 752 (1944), opined:

[T]he prima facie presumption that the recitals of the attestation clause are true will not usually be overcome merely by the fact that one of the subscribing witnesses testifies that the statutory requirements were not complied with.... [T]he burden of proof is upon the caveator to show by clear and convincing evidence that the facts therein stated are not true. The court views such contradictory testimony with great caution and scans it with grave suspicion, because the testimony after the testator's death contradicts the written evidence given on the instrument during the testator's lifetime.... [Citations omitted.]

 The will in the present case had affixed to it an attestation clause declaring it to be the testator's last will and testament, signed by him in the presence of the witnesses who signed it in his, and each other's, presence. A witness's testimony as to a general practice which *may not* comply with all formal requirements simply is not clear and convincing evidence that requirements were not met in a specific instance. Judge Wilner, now Chief Judge, for us, in the fraud case of *Weisman v. Connors,* 76 Md.App. 488, 502–05, 547 A.2d 636 (1988), *cert. denied,* 314 Md. 497, 551 A.2d 868 (1989), stated:

> The law now recognizes three different, supposedly discrete standards for proving an allegation of fact in court: proof by preponderance of the evidence, proof by "clear and convincing" (or sometimes "clear, cogent, unequivocal, and convincing") evidence, and proof beyond a reasonable doubt. *See generally* E. Cleary, *McCormick On Evidence* §§ 339–41 (3d ed. 1984); *Addington v. Texas,* 441 U.S. [418] at 423–25, 99 S.Ct. [1804] at 1808–09 [60 L.Ed.2d 323 (1979)].

* * * * * *

Adopting the view of this Court in *Whittington v. State,* 8 Md.App. 676, 679 n. 3, 262 A.2d 75 (1970), the Court [of Appeals] proceeded to define the standard in relational terms, as requiring "more than a preponderance of the evidence *and less than evidence beyond a reasonable doubt."* (Emphasis added.) *Berkey v. Delia,* 287 Md. [302] at 320, 413 A.2d 170 [(1980)]. *See also In Re Bennett,* 301 Md. 517, 529, 483 A.2d 1242 (1984). It then quoted from 30 Am.Jur.2d *Evidence* § 1167 (1967), including this statement:

> "It has also been said that the term 'clear and convincing' evidence means that the witness to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear convic-

tion, without hesitancy, of the truth of the precise facts in issue."

Concluding, we cited the Maryland Civil Pattern Jury Instruction which states: "To be clear and convincing, evidence should be 'clear' in the sense that it is certain, plain to the understanding, and unambiguous and 'convincing' in the sense that it is so reasonable and persuasive as to cause you to believe it."

The orphans' court was apparently unconvinced that the caveator had met his burden. We likewise are unconvinced and shall affirm.

ORDER OF THE ORPHANS' COURT FOR CALVERT COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.