REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2730

September Term, 2013

_____

JAMAL MARCUS PAGE

v.

STATE OF MARYLAND

_____

Berger,
Nazarian,
Leahy,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: April 30, 2015

The victim in this case was shot six times at point blank range and lived to testify at trial on January 8, 2014, in the Circuit Court for Prince George's County, that Appellant Jamal Marcus Page was the shooter, and, that Appellant tried to shoot him on a prior occasion during an argument over money owed, but the handgun jammed. The jury convicted Appellant of attempted second-degree murder and use of a handgun in the commission of a felony or crime of violence, as well as other related crimes, but acquitted him of attempted first-degree murder. The court imposed an aggregate sentence of 50 years of incarceration with all but 35 years suspended.

In his timely appeal, Appellant raises two questions for our review:

I. "Did the lower court err in admitting evidence of an alleged other assault committed by the appellant against the victim about two weeks before the charged offense?"

II. "Did the lower court err in instructing the jury that the appellant's 'flight' from the scene of a shooting could be considered as consciousness of his guilt where the evidence established, at most, only simple departure from the scene of the crime?"

We hold that the circuit court did not err in admitting the prior assault into evidence because of its heightened relevance in establishing the identity of Appellant as the shooter by showing that Appellant had the motive and intent to commit the crime. We also conclude that based on testimony that Appellant immediately ran away from the crime scene after the shooting, the court did not err in delivering a flight instruction. Accordingly, we affirm the judgments of the circuit court.

## BACKGROUND

Though Appellant does not challenge the sufficiency of the evidence, we nevertheless review, briefly, the facts presented at trial to provide context for our examination of Appellant's contentions of error. *See Goldstein v. State*, 220 Md. 39, 42, (1959) (noting that "[t]o understand the contentions made, it is necessary to relate some of the background of the case"); *Washington v. State*, 180 Md. App. 458, 462 n.2 (2008).

According to the victim, Rubearth Nichols, at about 2 p.m. on June 7, 2013, he and his then-fiancée drove to a barbershop in a Prince George's County shopping center. After they arrived, Nichols stood outside of his vehicle conversing with a man named Javon. Suddenly Appellant ran up, wearing a camouflage jacket, and said "What's up? What's up, Slim? What's up now?" Then Appellant started shooting Nichols at point blank range with a handgun. Nichols fell to the ground, and Appellant continued shooting. After he shot Nichols six times, including three times in the head, he "ran in the other direction." Shortly thereafter the police arrived at the scene and Nichols was taken to the hospital.

Nichols testified at trial that he had known Appellant for at least nine or ten years, and he provided both in-court and out-of-court identifications of Appellant as the shooter. He recounted an incident that occurred about two weeks prior to the shooting, when he and Appellant had an argument over money that Appellant owed him for a pair of shoes. According to Nichols, before the argument was over, Appellant tried to shoot him, but Appellant's gun jammed. Nichols was then able to run away to safety.

Lazema Nichols, Nichols's fiancée at the time, testified that after she drove Nichols to the barbershop on June 7, 2013, she remained in the vehicle while Nichols spoke to someone wearing a dark jacket and blue jeans directly behind the car. When she heard gunshots, however, she looked in her rear-view mirror, and saw "a gentleman with an army fatigue jacket on and blue jeans." Hearing more gunshots, she quickly drove off out of the parking lot. She testified that as she drove off, she looked over and saw "the same gentleman in the mirror now standing over my husband shooting him" and confirmed that he was wearing a camouflage jacket. The man then "took off running" around the corner of the shopping center toward a nearby apartment complex, so she drove back into the parking lot to assist her fiancé.

Officers responded to the scene and received a description of the suspect as wearing a camouflage coat and jeans and that he was "approximately five eight in height with a handgun." Officers then canvassed the surrounding area, and a canine track indicated a positive hit at an apartment located about 300 to 400 yards away from the crime scene. The owner of that apartment consented to a search, and when officers entered, they observed Appellant in the rear bedroom. The search discovered a camouflage jacket, a pair of gloves, and a mask in the back bedroom. A black and silver semiautomatic handgun was also found in the jacket, but no latent prints were recovered from the gun. An expert in firearms examination and identification testified that the cartridge casings and bullet items recovered from the scene of the shooting were fired from the same handgun.

3

Additional facts are presented as they pertain to the issues examined next.

## DISCUSSION

### I.

Appellant contends that the circuit court erred in admitting evidence of the prior assault as an exception to Maryland Rule 5-404(b) because it had no special relevance to a contested issue at trial, was not supported by clear and convincing evidence, and was more unduly prejudicial than probative. Rule 5-404(b) provides:

> (b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts including delinquent acts as defined by Code, Courts Article, § 3-8A-01 is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of notice, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

The disputed testimony occurred during the direct examination of Nichols when the State asked him whether he had seen Appellant any time within the month before June 7th. Defense counsel objected, and the court responded, "Basis. Approach." When both parties approached the bench, the court asked for a proffer, and the State responded that Nichols "saw the defendant two weeks prior and that at that time the defendant attempted to shoot him, but the gun jammed and that he ran and he heard later that the gun was firing but he had already run away." The court then asked, "Is there going to be any link with any type of motive[,]" to which the State responded, "Yes. It's over money, basically." The State expounded:

> My victim will say that he sold him articles of clothing or shoes and that the defendant owed him money. He asked the defendant for the money and

4

he said he's not giving him any, and that's when he pulled the gun on him. It jammed and then he sees him two weeks later and that's when he does shoot him.

In response, defense counsel argued:

[DEFENSE COUNSEL]:   We're talking about an incident that, if it did happen, was never reported to the police.  He never complained about it.  He comes up after – as a matter of fact, this is not even the first statement he made.  This is in the second statement.  In the first statement there's no mention of this whatsoever.  From what I'm hearing, he allegedly had an argument with him over money.  He then runs away and at some distance away, he allegedly hears what he thinks will be gunfire.

[COURT]:    Gunshots coming from the direction where the defendant was.

[DEFENSE COUNSEL]:   It's not the defendant shooting at him.  He's not able to say that.  He's not able to say that the person who is firing, if this is gunshots, if he believes this is gunshots, he's not able to say this particular person is firing the gun.

\*      \*      \*

. . . I'm saying there's no direct link between this defendant attempting to shoot this individual on a prior occasion and then this individual supposedly witnessing this individual shoot at him or fire a gun whatsoever.  There's no direct link.  That's highly prejudicial, not only because there's no direct evidence to it, but also if, in fact, this happened, why didn't he go to the cops?

[COURT]:    The direct evidence would be the proffered testimony of the witness.  And it is probative on the issue of whether or not this is a premeditated act.  So I find that it's probative value is not substantially outweighed by the prejudice that inures from the prior bad act.[1]

---

[1]     The State suggests Appellant failed to preserve his first argument for review, but because the circuit court ruled on the admissibility of the evidence as a prior bad act, the matter is preserved for our review. *See* Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court. . . ."). Here, defense counsel lodged a general objection, but when the court requested a basis and for the parties to approach the bench, counsel was required to provide a specific objection. *See Boyd v. State*, 399 Md. 457, 476 (2007) (continued . . . )

The court further noted that defense counsel's concerns could be explored during cross-examination. The parties resumed trial tables, and the following testimony occurred:

> [STATE]: Mr. Nichols, I was asking you you've known the defendant for at least nine or ten years. Within the past year of 2013, had there come an occasion where you met with the defendant in person?
>
> [MR. NICHOLS]: Yes, ma'am.
>
> [STATE]: And how soon before this incident was that?
>
> [MR. NICHOLS]: About two weeks.
>
> [STATE]: Why were you going to meet with the defendant?
>
> [MR. NICHOLS]: Because he had got some shoes from me. I actually wasn't going to meet with him. I was just walking, eating my fish sandwich, and I seen him and he had gotten some shoes from me. I asked him what's going on with the money for the shoes? And he said what you mean what's going on with the money for your shoes? I haven't seen you in how long? What you mean what's going on with the money for the shoes? So me and him got into an altercation. That's when he pulled a gun out and pointed at me. He clicked it, but I guess it didn't fire. So I ran. And when I was running, that's when I heard the shots go off. About eight or nine shots went off and I kept running.
>
> [STATE]: You said this was two weeks prior to you actually being shot by the defendant?

---

(explaining that a general objection preserves all existing grounds for admissibility unless, *inter alia*, the court requires that a ground be stated). Here, however, although defense counsel did not specifically object on the ground of inadmissible other crimes evidence, the court nevertheless initiated the discussion regarding the "bad acts" exclusionary rule by asking if the evidence would be linked to motive. We note as an aside that even though a general objection is sufficient to preserve a prior bad acts objection, the Court of Appeals has recognized an ensuing problem—that "[a] general objection may not alert the court to the need to conduct th[e] analysis [required under 5-404(b), discussed *infra*,]" which is a problem with the rule itself. *Borchardt v. State*, 367 Md. 91, 132 n.7 (2001).

[MR. NICHOLS]:   Yes, ma'am.

Nichols clarified that he and Appellant were yelling at each other and were about to get into a physical altercation when Appellant pulled the gun out. The gun appeared to be a black 9 mm—the same handgun, according to Nichols, he was shot with two weeks later. Defense counsel cross-examined Nichols about his failure to report the incident at the time and in his first statement to the police.[2]

It is established under Maryland law that "[e]vidence of prior criminal acts may not be introduced to prove guilt of the offense for which the defendant is on trial." *Terry v. State*, 332 Md. 329, 334 (1993) (citing *Cross v. State,* 282 Md. 468, 473-74 (1978)); *accord Ross v. State*, 276 Md. 664, 669 (1976) ("[I]n a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible."). This principle of exclusion, *see Harris v. State*, 324 Md. 490, 500 (1991), is encapsulated in Maryland Rule 5-404(b). The policy undergirding this rule seeks to preclude "the initial introduction by the

---

[2]   Nichols explained that he could not speak during his first interaction with the police relating to this case on June 13, 2013. The record reflects that the June 13, 2013 interaction was at the hospital, at which Mr. Nichols indicated his answers to the photo array questions only by nodding, indicating either yes or no, and writing on a piece of paper, due to the injury to his jaw. He stated that he told the police about the incident during his second statement on November 6, 2013 because then he could speak. On re-direct examination, he further clarified that he did tell the police during his first statement that Appellant shot him because he did not want to pay for the shoes given to him.

7

prosecution of evidence of bad character." *Ross*, 276 Md. at 669; *accord Wynn v. State*, 351 Md. 307, 317 (1998). The Court of Appeals explained that "a jury, confronted with evidence that a defendant committed another crime, may utilize improperly the evidence to conclude that the defendant is a 'bad person' and, therefore, should be convicted of the charges for which he is on trial." *Wynn*, 351 Md. at 317 (citation omitted). Indeed, an accused should only be convicted "by evidence which shows he is guilty of the offense charged, and not by evidence which indicates his guilt of entirely unrelated crimes." *Ross*, 276 Md. at 669. Moreover, evidence of other crimes "may tend to confuse the jurors or prejudice their minds against the accused to predispose them to a belief in his guilt." *Id.*

"Evidence of other crimes may be admitted, however, if it is substantially relevant to some contested issue in the case and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal." *State v. Faulkner*, 314 Md. 630, 634, 552 A.2d 896, 897-98 (1989) (citations omitted). Rule 5-404(b) specifies that evidence of prior bad acts "may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident." Other judicially recognized exceptions include "[w]hen several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other"; "[w]here the 'other crime' tends to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial"; "[p]rior criminal conduct . . . may be admitted . . . to

8

show consciousness of guilt"; and when "[o]ther like crimes by the accused [are] so nearly identical in method as to earmark them as the handiwork of the accused." *Oesby v. State*, 142 Md. App. 144, 161-62 (internal quotation marks and citations omitted), *cert. denied,* 369 Md. 181 (2002). These identified exceptions "are 'neither mutually exclusive nor collectively exhaustive.'" *Emory v. State*, 101 Md. App. 585, 616 (1994) (quoting C. McCormick, *Evidence* § 190 at 558 (E. Cleary ed., 3d ed. 1984)), *cert. denied,* 337 Md. 90 (1995).

In order for "other crimes" evidence to be admissible, the circuit court—in its role as the evidentiary sentry—must conduct a threefold determination before permitting the evidence to be presented to the jury. First, the court must find that the evidence is "'relevant to the offense charged on some basis other than mere propensity to commit crime.'" *Skrivanek v. State*, 356 Md. 270, 291 (1999) (quoting *Whittlesey v. State,* 340 Md. 30, 59 (1995)). In other words, the question is whether the evidence falls into one of the recognized exceptions. *State v. Faulkner,* 314 Md. 630, 634 (1989). This determination does not involve discretion; on review by this Court, it "is an exclusively legal [question], with respect to which the trial judge will be found to have been either right or wrong." *Oesby,* 142 Md. App. at 159 (citing *Faulkner,* 314 Md. at 634). Second, the court must "decide whether the accused's involvement in the other crimes is established by clear and convincing evidence[,]" and we "review this decision to determine whether the evidence was sufficient to support the trial judge's finding." *Faulkner,* 314 Md. at 634-35 (citations omitted). Third, "[t]he necessity for and

9

probative value of the 'other crimes' evidence is to be carefully weighed against any undue prejudice likely to result from its admission[,]" and this is a determination that we review for abuse of discretion. *Id.* Not until the court determines that the evidence can clear these hurdles may the court open the gates for the admission of "other crimes" evidence. Indeed, "[t]hese substantive and procedural protections are necessary to guard against the potential misuse of other crimes or bad acts evidence and avoid the risk that the evidence will be used improperly by the jury against a defendant." *Streater v. State*, 352 Md. 800, 807 (1999).

### 1. Special Relevance

Evidence of a prior bad act may be admissible if it has "special relevance" to the case, meaning that it "is substantially relevant to a contested issue in the case, and is not offered merely to prove criminal character." *Terry*, 332 Md. at 334 (citing *Harris v. State,* 324 Md. 490, 500 (1991)). This "initial hurdle" means "not simply that the 'other crimes' evidence be technically or minimally relevant to some formal issue in the case other than criminal propensity, but further 1) that the relevance be *substantial* and further still 2) that it be with respect to a *genuinely contested issue* in the case." *Emory*, 101 Md. App. at 602.

Appellant argues that the alleged prior assault had no special relevance to the *contested* issues at trial; in his view, motive and intent were not at issue, only criminal agency—*i.e.* whether it was Appellant who shot Nichols—was disputed. We agree that Appellant's main theory of defense was, indeed, that he was not the shooter, prompting

10

the contested issue of identity in the case.[3] To advance that theory, Appellant attacked the credibility of Nichols's testimony and identifications, and emphasized the lack of fingerprint and DNA evidence.

This Court has recognized that evidence relevant to establish motive and intent may also be relevant to establishing identity. *See, e.g.*, *Emory*, 101 Md. App. at 606 ("Showing which suspect had a motive to commit a crime . . . helps to establish the *identity* of the criminal."); *accord Snyder v. State*, 361 Md. 580, 604 (2000) ("Motive . . . also may be relevant to the proof of . . . intent or identity."). Indeed, "other crimes" evidence does not have to fall neatly into one particular exception and be admitted for one purpose. This Court has explained:

> As the number of recognized categories of exceptions [to the "other crimes" exclusionary rule] expands, there is, as a matter of course, inevitable overlapping. . . . The label we put on an exception, therefore, is not that important, just so long as the evidence of "other crimes" possesses a special or heightened relevance and has the inculpatory potential to prove something other than that the defendant was a "bad man."

*Oesby*, 142 Md. App. at 162; *accord id.* at 163 ("What matters is that the evidence of the 'other crimes,' however it might be categorized or labeled, enjoyed a special or heightened relevance in helping to establish the identity of the appellant as the perpetrator

---

[3] The State argues that Appellant specifically disputed the issue of intent by moving for judgment of acquittal on the State's failure to show premeditation or malice aforethought on the attempted first-degree murder charge, and by briefly arguing the same in closing. However, these acts did not propel the issue of intent to the level of a "genuine" dispute in the sense that intent is an issue disputed to some degree at any criminal trial. *Emory*, 101 Md. App. at 603 (citing *People v. Golochowicz*, 319 N.W.2d 518, 524 (Mich. 1982)).

of the crimes on trial."); *see, e.g., Wilder v. State*, 191 Md. App. 319, 344 (2010) (affirming the circuit court's admission of evidence of the defendant's threats to the victims before the shooting with which the defendant was being prosecuted based on its special relevance to identity of the shooter, whose identity was disputed, and the defendant's motive).

Here, the "prior act" evidence was that just two weeks before the charged crime, Nichols and Appellant got into an altercation about money owed for a pair of shoes. Appellant attempted to shoot Nichols, but the gun jammed, and Nichols heard gunshots as he ran away. Two weeks later, Appellant approached Nichols again and, this time, successfully shot him multiple times. In our view, the connection between the first attempted shooting and the subsequent shooting two weeks later is patent. *See Snyder*, 361 Md. at 605 ("[T]he prior conduct must be committed within such time, or show such relationship to the main charge, as to make [the] connection obvious, . . . that is to say they are so linked in point of time or circumstances as to show intent or motive.") (internal quotation marks and citations omitted). The prior incident, if believed by the jury to have occurred, suggests that the second shooting likely occurred because of both the money dispute and because Appellant's prior attempt to shoot Nichols failed. It also countered Appellant's position that he was not the shooter by demonstrating that *Appellant* had motive and intent to commit the shooting.

Moreover, even if preserved,[4] we reject Appellant's argument that the dispute about money could have been admitted as evidence of motive in lieu of the assault itself, which had no purpose to show motive and should have been excluded. Clearly the episode must be considered as a whole because not only did it support an inference that the subsequent shooting was done by Appellant with the purpose of settling the money dispute, but that it was committed to follow through on *his unaccomplished aim* of the prior assault: to shoot Nichols. In other words, it is less relevant to the issue of identity *why* Appellant tried to shoot Nichols but failed; but rather, that Appellant was the same man who tried to shoot him and failed. Appellant's failed attempt to shoot Nichols supplies heightened evidence of motive and intent to establish Appellant's identity as the shooter. In sum, we conclude that the circuit court did not err in finding that the prior assault had special, heightened relevance apart from exposing a criminal propensity. The prior assault had direct relevance to the identity of the shooter and his plan, establishing the identity of the shooter as Appellant vis-à-vis showing that *Appellant*—and not some

---

[4] In *Faulkner, supra*, the Court of Appeals recognized that a circuit court "may admit portions or all of the other crimes evidence, depending upon its probative value and the prejudice involved in its admission." 314 Md. at 643 n.3. The Court declined to address whether one of the several robberies—which was particularly prejudicial— admitted as prior crimes evidence should have been excluded because the defendant did not argue below that it should be excluded or identify its particularly prejudicial aspects. *Id.* An argument, absent a threat, is not a prior bad act, but in any event, Appellant did not argue below that the dispute about money could be admitted but the attempted shooting should be excluded; therefore, this argument is not preserved.

13

other unidentified individual—had the motive to and actually tried, but failed, to shoot Nichols.

### 2. Clear and Convincing Evidence

"'Clear and convincing evidence means that the witness to a fact must be found to be credible, and that the facts to which [he] ha[s] testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Couser v. State*, 198 Md. App. 486, 514-15 (2011) (quoting *Goroum v. Rynarzewski,* 89 Md. App. 676, 684-85 (1991)). This Court has explained, however, "it self-evidently is the trial judge who must be thus persuaded [clearly and convincingly]" that the prior act occurred, and on appellate review, this Court does not determine whether we would be persuaded that the act occurred, but only "the legal question of whether there was some competent evidence which, if believed, could persuade the fact finder as to the existence of the fact in issue." *Emory*, 101 Md. App. at 622. Therefore, we must determine "whether the evidence was sufficient to support the trial judge's finding." *Faulkner*, 314 Md. at 635.

Appellant argues that the State failed to establish the prior assault by clear and convincing evidence because no other evidence supported Nichols's allegations, and Nichols did not report the incident at the time it occurred or in his first statement to the police. These arguments speak to the persuasiveness of the evidence, not its sufficiency, and, as noted above, it is not this Court's role to determine whether we would be

14

persuaded clearly and convincingly that the prior assault occurred. In this case, Nichols—who knew Appellant for nine to ten years—testified under oath that this event occurred two weeks earlier, and there is no reason to believe that Nichols was unworthy of being accorded credibility. We have no basis to conclude that Nichols's testimony would not be legally sufficient to persuade the circuit court that the prior assault occurred on a clear or convincing level. *See, e.g., Emory*, 101 Md. App. at 623 (concluding that the testimony of a competent witness, under oath, that prior crimes occurred was sufficient); *Hyman v. State*, 158 Md. App. 618, 627 (concluding that the victim's testimony of a prior sexual assault occurring one month before the sexual assault on trial, if believed, was "in itself" sufficient), *cert. denied,* 384 Md. 449 (2004).

3. Undue Prejudice

Last, the circuit court was required to carefully weigh the necessity for and probative value of the prior assault against any undue prejudice likely to result from its admission. *Faulkner*, 314 Md. at 635 (citations omitted). "This final balancing between probative value and *unfair* prejudice is something that is entrusted to the wide discretion of the trial judge. The appellate standard of review, therefore, is the highly deferential abuse-of-discretion standard." *Oesby*, 142 Md. App. at 167 (emphasis added).

We discern no abuse of discretion by the circuit court in this case. The State presented the "prior acts" evidence to demonstrate Appellant's motive and intent, particularly the premeditation element of attempted first-degree murder. This evidence also supported the State's theory that Appellant was the shooter in the face of defense

counsel's argument that he was not. That the State already had a relatively strong case—especially in light of Nichols's testimony that he knew Appellant for nine to ten years and identified him as his shooter and the dog sniff led the police to an apartment nearby the crime scene in which Appellant was found as well as a camouflage jacket and handgun—does not preclude the State from further supporting its case; "[w]hen we are talking only about the legitimate prejudice that inevitably results from competent evidence enjoying a special or heightened relevance, there is no downside to making a strong case even stronger." *Id.* at 166. Certainly, the evidence was prejudicial, as most evidence often is against an accused, but we are unable to conclude that the court abused its discretion in concluding that the evidence was not *unfairly* prejudicial to such a degree that it outweighed the probative value of the evidence.[5] Indeed, this is not a case where the State introduced an unrelated, identical prior assault to demonstrate Appellant's propensity to commit another shooting; instead, both incidents occurred two weeks apart, the prior assault was a *failed* attempted shooting, and they were linked, according to the State, by a common dispute. Therefore, the circuit court did not err in admitting the evidence.

---

[5] Moreover, at the close of all evidence, the court instructed:

> You have heard evidence that the defendant committed the crime of assault against Rubearth Nichols two weeks prior, which is not a charge in this case. You may consider this evidence only on the question of plan or intent. However, you may not consider this evidence for any other purpose. Specifically, you may not consider it as evidence that the defendant is of bad character or has a tendency to commit crime.

**II.**

Next, Appellant contends that the circuit court erred by instructing the jury that Appellant's flight from the shooting scene could be considered as evidence of consciousness of guilt, because, in Appellant's view, the evidence only demonstrated unremarkable departure from the scene, not flight. The following instruction is in contention:

> A person's flight or concealment immediately after the commission of a crime or after being accused of committing a crime is not enough, by itself, to establish guilt. But it is a fact that may be considered by you as evidence of guilt. Flight or concealment under these circumstances may be motivated by a variety of factors, some of which are consistent with innocence. You must first decide whether there is evidence of flight or concealment. If you decide there is evidence of flight or concealment, then you must decide whether this flight or concealment shows a consciousness of guilt.

Generally, "[w]e review a trial judge's decision whether to give a jury instruction under the abuse of discretion standard." *Thompson v. State*, 393 Md. 291, 311 (2006) (citations omitted). Maryland Rule 4-325(c) provides that a "court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." The Court of Appeals has interpreted this rule as requiring a court "to give a requested instruction under the following circumstances: (1) the requested instruction is a correct statement of the law; (2) the requested instruction is applicable under the facts of the case; and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction actually given." *Ware v. State*, 348 Md. 19, 58 (1997) (citations omitted).

17

Appellant disputes only the second prong:  whether the instruction was applicable in this case.  "A requested jury instruction is applicable if the evidence is sufficient to permit a jury to find its factual predicate." *Bazzle v. State*, 426 Md. 541, 550 (2012). This preliminary determination "'is a question of law for the judge[,]'" and on appellate review, we must determine whether the requesting party "'produced that minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the legal theory desired.'" *Id.* (quoting *Dishman v. State,* 352 Md. 279, 292-93 (1998)).  This threshold is low, in that the requesting party must only produce "some evidence" to support the requested instruction.  *Id.* at 551 (citing *Dykes v. State*, 319 Md. 206, 216 (1990)).  Upon our review of whether there was "some evidence," we view the facts in the light most favorable to the requesting party, here being the State.  *Hoerauf v. State*, 178 Md. App. 292, 326 (2008) (viewing the evidence in the light most favorable to the State to determine whether the State's request for a flight instruction was proper).

The Court of Appeals has established that a flight instruction is properly warranted when four inferences may reasonably be drawn from the evidence: "[1] that the behavior of the defendant suggests flight; [2] that the flight suggests a consciousness of guilt; [3] that the consciousness of guilt is related to the crime charged or a closely related crime; and [4] that the consciousness of guilt of the crime charged suggests actual guilt of the crime charged or a closely related crime."  *Id.* at 312 (quoting *Thompson,* 393 Md. at 311).  Appellant's arguments speak to the first and second inferences.

18

As to the first inference, "[f]light is defined as an 'act or instance of fleeing, esp. to evade arrest or prosecution. . . . [a]lso termed *flight from prosecution; flee from justice.*'" *Id.* at 323 (quoting Black's Law Dictionary 670 (8th ed. 2004)). "At its most basic, evidence of flight is defined by two factors: first, that the defendant has moved from one location to another; second, some additional proof to suggest that this movement is not simply normal human locomotion." *Id.* (citing 22 *Charles Alan Wright et al., Federal Practice and Procedure* § 5181 (1978 & Supp. 2007)). As to the second inference, the movement also "must reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid apprehension or prosecution based on that guilt." *Id.* at 324 (citing *State v. Lincoln,* 164 N.W.2d 470, 472 (Neb. 1969)). To this end, there is a distinction between mere departure from the crime scene and actual flight. "An accused's departure from the scene of a crime, without any attendant circumstances that reasonably justify an inference that the leaving was done with a consciousness of guilt and pursuant to an effort to avoid apprehension or prosecution based on that guilt, does not constitute 'flight,' and thus does not warrant the giving of a flight instruction." *Id.* at 325-26.

Appellant analogizes to the case of *Hoerauf v. State*, 178 Md. App. 292 (2008). There, we concluded that the flight instruction was not warranted based on the evidence. When viewed in the light most favorable to the State, the evidence demonstrated that:

> appellant simply walked away from the scene of the crime with the group of individuals who had just perpetrated the robberies. When appellant left the scene, the police had not arrived, nor was their arrival imminent. There

19

was no evidence that appellant attempted to flee the neighborhood or to secrete himself from public view to avoid apprehension. Indeed, only 10-15 minutes after the crime, the police stopped appellant in a nearby neighborhood with three of the other perpetrators, one of whom possessed some of the stolen property.

*Id.* at 326. The facts before us are distinguishable. Unlike *Hoerauf*, the evidence in this case included the testimony of two eyewitnesses that Appellant ran, not walked, away immediately after the shooting. Mr. Nichols testified that Appellant ran away from the scene, and Mrs. Nichols testified that Appellant "took off running" after the shooting into the woods next to the barbershop shopping center where an apartment complex was located. Moreover, although the police had not arrived when Appellant began running away, it would be fair to presume that authorities would be arriving to the scene shortly, given the number of gunshots fired in a public place. Indeed, the evidence reflected that the barbershop was occupied. In addition, Appellant did not remain in the public eye as in *Hoerhauf*, but was thereafter seen in an apartment nearby the crime scene, indicating that he did avoid public view.

We have recognized that one of the "classic" instances of flight "is where a defendant leaves the scene shortly after the crime is committed and is running, rather than walking[.]" *Hoerauf*, 178 Md. App. at 324. This is what the evidence reflected in this case, and the evidence supported a finding of all four inferences articulated above. Therefore, when viewing the facts in the light most favorable to the State, we conclude that there was "some evidence" that Appellant's departure from the scene was accompanied with attendant circumstances that could reasonably justify an inference of a

20

consciousness of guilt and an effort to avoid apprehension based on that guilt.  The circuit

court did not err in delivering the instruction.

**JUDGMENTS AFFIRMED;**
**COSTS TO BE PAID BY APPELLANT.**

21