*Robert Rainey v. State of Maryland*, No. 3094, Sept. Term 2018.  Opinion by Arthur, J.

**EVIDENCE—STATEMENT OF IDENTIFICATION**

A prior consistent statement of identification is admissible under a recognized exception to the rule against hearsay.  Such a statement may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

**CRIMINAL LAW—PHYSICAL APPEARANCE—CONCEALMENT OR DESTRUCTION OF EVIDENCE**

In some circumstances, a defendant's physical attributes and physical appearance may be evidence that the factfinder can consider at trial.  It follows that when defendants do something to remove, erase, eliminate, or obliterate some aspect of their physical appearance, they can be properly said to have destroyed or concealed evidence.

**CRIMINAL LAW—CONSCIOUSNESS OF GUILT JURY INSTRUCTION BASED ON CONCEALMENT OF EVIDENCE**

Before a trial court may give a consciousness-of-guilt jury instruction based on the defendant's concealment of evidence, the evidence must support a finding of four inferences: (1) from the defendant's conduct, a desire to conceal evidence; (2) from a desire to conceal evidence, consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

Here, the defendant changed his appearance by cutting off almost all of his hair following the crime.  The jury could infer (1) from defendant's change in appearance, a desire to conceal evidence; (2) from a desire to conceal evidence, consciousness of guilt; (3) from consciousness of guilt, consciousness of guilt of to commit the murder charged; and (4) from consciousness of guilt of the murder, actual guilt of the murder.

**CRIMINAL LAW—CONSCIOUSNESS OF GUILT JURY INSTRUCTION BASED ON CONCEALMENT OF EVIDENCE—CONCEALMENT OF EVIDENCE BASED ON A CHANGE IN APPEARANCE**

A jury may infer consciousness of guilt if a defendant alters his appearance.  In this case, the defendant cut off almost all of his hair and got rid of a distinctive hairstyle. Throughout defendant's trial, the concept of "destruction of evidence" was synonymous with the defendant's change in appearance: whenever the State talked about drawing an inference of consciousness of guilt from the destruction or concealment of evidence, it was referring to the defendant's change of appearance.  Therefore, the trial court did not err or abuse its discretion in giving the pattern jury instruction concerning concealment or

destruction of evidence when the evidence established that the defendant had altered his appearance by cutting off his long hair.

Even if the court erred in giving the instruction concerning concealment or destruction of evidence, the error was harmless beyond a reasonable doubt because the court could have instructed the jury that it could infer consciousness of guilt from a sudden and dramatic change in appearance, and the jury understood that "destruction of evidence" referred to the defendant's change in appearance.

**JUDICIAL PROCEEDINGS—PRESUMPTIONS ON REVIEW**

Unless an appellate court has reason to think otherwise, trial judges are presumed to know the law and to apply it properly. Further, there is a strong presumption that judges properly perform their duties. They are not required to articulate every thought and step of logic. In this case, the trial court was not required to enunciate its findings regarding the inferences to be made before giving a consciousness-of-guilt jury instruction. It is ordinarily unnecessary for a trial court to articulate its analysis of the inferences for an appellate court to be satisfied that the trial court did in fact consider them. The trial court did not err in failing to spell out its analysis of the inferences on the record.

Circuit Court for Baltimore City
Case No. 117186008

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 3094

September Term, 2018

_____

ROBERT RAINEY

v.

STATE OF MARYLAND
_____

Fader, C.J.,
Arthur,
**Gould,

JJ.
_____

Opinion by Arthur, J.
_____

Filed: September 28, 2021

** Judge Steven B. Gould, now serving on the
Court of Appeals, participated in the hearing
and conference of this case while an active
member of this Court; he also participated in the
adoption of this opinion while an active
member of this Court; he did not participate in
the Court's decision to designate this opinion
for publication pursuant to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On the afternoon of May 2, 2017, Dartania Tibbs was fatally shot in the 800 block of North Glover Street in Baltimore. After hearing testimony from an eyewitness and viewing surveillance video of the scene, a jury in the Circuit Court for Baltimore City convicted appellant Robert Rainey of first-degree murder, using a handgun in a crime of violence, and possessing a firearm after a disqualifying conviction.

The court sentenced Rainey to life in prison for the murder, plus concurrent terms of twenty years on the handgun offense and five years without parole on the firearm offense. He presents the following questions for review:

1. Did the court err in refusing to redact the portion of a witness's statement in which she stated that [Rainey] was "doing him on the corner"?

2. Did the court err in giving the destruction-of-evidence pattern jury instruction based on the State's contention that [Rainey] cut his dreadlocks off after the shooting?

After the parties had filed their briefs, this Court requested supplemental briefing on three additional questions:

1. Is it an abuse of discretion for the circuit court to fail to state expressly on the record that it has determined that the evidence reasonably supports each of the four inferences discussed in *Thompson v. State*, 393 Md. 291 (2006), with respect to a consciousness of guilt instruction?

2. Is a person's physical appearance, or elements of a person's physical appearance (such as a distinctive hairstyle), "evidence" for purposes of consciousness of guilt instructions? The response should address the definition of "evidence" given to the jury (MPJI-Cr. 3:00).

3. If the Court determines that it was an abuse of discretion for the circuit court to instruct the jury using pattern jury instruction 3:26 [concerning concealing or destroying evidence], but that it would not have been an abuse of discretion for the circuit court to have done so using pattern jury instruction 3:27 [concerning suppressing, altering, or creating evidence] or

a tailored consciousness of guilt instruction addressing alteration of appearance, was the abuse of discretion harmless?

Because we conclude that the court did not commit reversible error, we shall affirm the judgments.

## **FACTUAL BACKGROUND**

Responding to North Glover Street at 5:28 p.m. on May 2, 2017, a police officer found Dartania Tibbs lying dead in an alley, face up with a bullet wound in his neck. Tibbs had $63.90 in cash and thirteen gel caps of heroin on his person.

Citiwatch camera footage and surveillance video footage from a nearby store showed a woman and child within view of the murder. The woman in the video was Daphne Creighton.

At trial, Ms. Creighton testified that she was sitting on her front steps with her four-year-old grandson and her dog. She described her neighborhood as heavily infested with drugs.

Ms. Creighton observed two men who were arguing about money. One of the men was wearing his hair in dreadlocks, which were "hanging loose" and "going back and forth." He had on "a white t-shirt, shorts, and a pair of gray New Balance" shoes, matching the appearance of a person shown on the video.

2

When the other man replied that he was not going to give him any money, the man with dreadlocks walked away. The other man sat down on some steps. The block "was clear for a minute," meaning that "there was nobody purchasing anything."[1]

A short time later, Ms. Creighton heard a series of four booms. She saw the man with dreadlocks with his arm raised and the other man lying in the alley. The man with dreadlocks looked up and down the street and then ran off. Ms. Creighton walked over and saw that the other man was dead in the alley.

When the police arrived, Ms. Creighton did not tell them that she had witnessed the shooting, because, she testified, she "thought the drug dealers would retaliate" against her. Later that evening, however, she went to the police station and told the officers what she had seen.

In an excerpt from a recorded interview that was played for the jury, Ms. Creighton described the shooter, whose name she did not know, as "tall" and "slim." She said that "usually he's around here all the time." She added: "*He is usually doing him on the corner* —Well, he usually has these two outfits he wears all the time." (Emphasis added.)

On May 8, 2017, Ms. Creighton selected a photograph of a man wearing shoulder-length dreadlocks from a photo array. She said that she was 70 percent sure that the photo showed the man who shot Tibbs. She was instructed to call the police and the detective who had interviewed her if she saw the man again.

---

[1] The court understood "the block was clear" to mean that the drug dealing had stopped.

On June 6, 2017, Ms. Creighton saw the shooter on the street, now with a short haircut. She called 911, and the police arrested Rainey.

In a still image from a body-worn camera, Rainey's hair is cropped closely to the skull at the time of the arrest. The mug shots, taken after Rainey's arrest, also depict him with his hair closely cropped to the skull.

At trial, Ms. Creighton identified herself, her grandson, her dog, the victim, and Rainey on the video. She identified Rainey as the person whose dreadlocks were "going back and forth" in the video. She was "100 percent sure" that Rainey was the person she saw with Tibbs.

We shall add material from the record in our discussion of the issues raised by Rainey.

## **DISCUSSION**

### I.      **Admission of Witness's Prior Statement**

Rainey contends that the trial court erred in refusing to redact the portion of Daphne Creighton's recorded statement in which she stated that Rainey was "usually doing him on the corner." Rainey argues that this statement should not have been admitted because, he says, the "jurors would recognize" that "doing him" meant selling heroin. In his view, the court should have excluded this evidence under Rule 5-403 because it was more unfairly prejudicial than probative and under Rule 5-404(b) as inadmissible evidence of other wrongs.

We address Rainey's evidentiary challenges in turn, explaining why neither is supported by the record or the law.

4

## A. Trial Record

On the first day of trial, Daphne Creighton testified that she had seen Rainey at the murder scene. The State presented a recording of her statement to the police on the day of the shooting as a prior consistent statement of identification. *See* Md. Rule 5-802.1(c) (rule against hearsay does not exclude "[a] statement that is one of identification of a person made after perceiving the person").

Before the State played Ms. Creighton's statement, defense counsel objected, asserting that Ms. Creighton said "certain things" that were "prejudicial[.]" The prosecutor countered that he had edited out a portion of the original video, in which Ms. Creighton said that Rainey would be "out there on the corner selling drugs." Defense counsel persisted in the objection, arguing that the phrase "he is out doing him on the corner" was prejudicial. The prosecutor responded that there was "no prejudice" because the State had removed the explicit references to drugs, and the statement established how Ms. Creighton was able to identify Rainey: "he's a person on the corner that she sees."

After listening to the recording outside the presence of the jury, the trial court concluded that the phrase "doing him on the corner" was not unfairly prejudicial in light of other evidence that linked Rainey to drug activity. The court cited Ms. Creighton's testimony that just before the shooting the block "was clear," which the court understood to mean "no drug deals" were happening. In addition, the court cited Ms. Creighton's testimony that because of her fear of being shot by a drug dealer, she had waited to inform the police that she had witnessed the shooting. In the court's view, Ms. Creighton had already associated Rainey with drug dealing "any number of times."

5

## B. Rule 5-403 Challenge

Although Ms. Creighton's statement was admissible as a statement of identification under Rule 5-802.1(c), evidence "may be excluded," under Rule 5-403, "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" According to Rainey, the evidence that he was a drug dealer was unfairly prejudicial, and "[t]he probative value with respect to [his] guilt of the crimes for which he was on trial . . . is scant."

We review the decision to overrule Rainey's Rule 5-403 objection for abuse of discretion. *See State v. Simms*, 420 Md. 705, 725 (2011). When weighing the probative value of proffered evidence against its unfairly prejudicial impact, a trial court abuses its discretion only when no reasonable person would take the view that the court took, or when the court acts without reference to any guiding rules or principles. *See*, *e.g.*, *Williams v. State*, 232 Md. App. 342, 355-56 (2017), *aff'd*, 457 Md. 551 (2018). The decision "will not be reversed simply because the appellate court would not have made the same ruling." *King v. State*, 407 Md. 682, 697 (2009).

Here, the challenged evidence supplied the jury with information about the factual basis for Ms. Creighton's identification of Rainey, which was among the most important pieces of evidence in the State's case. For the reasons articulated by the trial court, the

6

prejudicial impact of the challenged statement, if any,[2] was mitigated by Ms. Creighton's testimony about Rainey's regular presence amidst the drug dealing on her street.

Based on this record, we conclude that the trial court did not abuse its discretion in overruling Rainey's Rule 5-403 objection.

## C. Rule 5-404(b) Challenge

Md. Rule 5-404(b) provides in pertinent part that "[e]vidence of other crimes . . . is not admissible to prove the character of a person in order to show action in the conformity therewith." "Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident[.]" *Id.* Rainey argues that under Rule 5-404(b) the challenged statement was inadmissible evidence of other crimes.

At trial, however, defense counsel did not cite Rule 5-404(b) as a ground for her objection, even after the trial court repeatedly asked her to specify the grounds. Consequently, Rainey did not preserve a Rule 5-404(b) objection for appellate review. *See*, *e.g.*, *Klauenberg v. State*, 355 Md. 528, 541 (1999) ("when specific grounds are given at trial for an objection, the party objecting will be held to those grounds and ordinarily waives any grounds not specified that are later raised on appeal").[3]

---

[2] The prejudicial effect of Ms. Creighton's statement depends largely on the supposition that one or more of the jurors would understand "doing him" to mean "selling heroin." It is not self-evident that that is true.

[3] But even if defense counsel had objected on the ground that the statement violated Rule 5-404(b), the court would not have erred or abused its discretion in admitting the statement: the court could have concluded that the statement was relevant

In summary, the trial court did not err or abuse its discretion in overruling Rainey's objection to the admission of Ms. Creighton's statement.

## II.    Consciousness-of-Guilt Jury Instruction

The State asked the court to give the pattern jury instruction on concealment or destruction of evidence, MPJI-Cr 3:26.  The State premised that request on the evidence that, after the murder, Rainey had dramatically altered his appearance by cutting off his dreadlocks and almost all of his hair.  Over Rainey's objection, the court granted the State's request and instructed the jury as follows:

> You have heard that the Defendant destroyed or concealed evidence in this case.  Concealment or destruction of evidence is not enough, it is not enough by itself to establish guilt, but may be considered as evidence of guilt.
>
> Concealment or destruction of evidence may be motivated by a variety of factors, some of which are fully consistent with innocence.  You must first decide whether the Defendant destroyed or concealed evidence in this case.  If you find that the Defendant destroyed or concealed evidence in this case, then you must decide whether that conduct shows a consciousness of guilt.

In his initial brief, Rainey argued that the trial court erred in instructing the jury that it could find that he had destroyed evidence, and thus that he evidenced consciousness of his guilt, because he had cut off his dreadlocks after the murder.  In response to this Court's request for supplemental briefing, Rainey argues that the circuit court abused its discretion in failing to enunciate certain findings before giving a consciousness-of-guilt instruction; that his hairstyle is not "evidence" within the meaning

---

to Rainey's identity, an express basis for admitting evidence of other crimes under the rule.

8

of MPJI-Cr 3:26 and thus that the court abused its discretion in giving that instruction; and that the court's error was not harmless beyond a reasonable doubt.

For the reasons stated below, we hold that the court was not required to enunciate its findings before giving a consciousness-of-guilt instruction. We also hold that, on the record in this case, the court did not err or abuse its discretion in giving the pattern jury instruction concerning concealment or destruction of evidence when the evidence established that the defendant had altered his appearance by cutting off his long hair. Finally, we hold that even if the court erred in giving the instruction concerning concealment or destruction of evidence, the error was harmless beyond a reasonable doubt because the court could have instructed the jury that it could infer consciousness of guilt from a sudden and dramatic change in appearance, and the jury understood that "destruction of evidence" referred to Rainey's change in appearance.

### A. Basic principles concerning consciousness-of-guilt jury instructions

Under Md. Rule 4-325(c), the court, upon a party's request, "shall[] instruct the jury as to the applicable law." In general, a court must give a requested instruction if "(1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *Dickey v. State*, 404 Md. 187, 197-98 (2008); *accord Wood v. State*, 436 Md. 276, 293 (2013); *Bazzle v. State*, 426 Md. 541, 549 (2012). "However, instructions as to facts and factual inferences are normally not required." *Harris v. State*, 458 Md. 370, 405 (2018).

9

An instruction concerning the destruction or concealment of evidence relates to the inferences that the jury may draw from the evidence. Consequently, a trial court has the discretion to give, or not to give, such an instruction "even if a party requests the instruction and the necessary predicate for such an instruction has been established." *Id*. at 405-06. A trial court has no discretion to give the instruction "where the facts do not support the inference." *Id*. at 406.

The facts can be said to support the inference, so that the court has the discretion to give the instruction, "'if the evidence is sufficient to permit a jury to find its factual predicate.'" *Page v. State*, 222 Md. App. 648, 668 (2015) (quoting *Bazzle v. State*, 426 Md. at 550). "This threshold is low, in that the requesting party must only produce 'some evidence' to support the requested instruction." *Id.* (citing *Bazzle v. State*, 426 Md. at 551).

"'The threshold determination of whether the evidence is sufficient to generate the desired instruction is a question of law for the judge.'" *Bazzle v. State*, 426 Md. at 550 (quoting *Dishman v. State*, 392 Md. 279, 292 (1998)). In deciding whether there was "some evidence" to support the instruction, "we view the facts in the light most favorable to the requesting party, here being the State." *Page v. State*, 222 Md. App. at 668-69.

**B. The trial court was not required to articulate its finding of the *Thompson* inferences on the record**

In *Thompson v. State*, 393 Md. 291 (2006), the Court of Appeals held that a court should give a flight instruction only when the following four inferences can be reasonably drawn from the evidence:

10

that the behavior of the defendant suggests flight; that the flight suggests a consciousness of guilt; that the consciousness of guilt is related to the crime charged or a closely related crime; and that the consciousness of guilt of the crime charged suggests actual guilt of the crime charged or a closely related crime.

*Id.* at 312.

The principle that flight following a crime may show consciousness of guilt has "been applied to a broad spectrum of behavior occurring after the commission of a crime," including "'flight from the scene or from one's usual haunts after the crime, assuming a false name, shaving off a beard, resisting arrest, . . . escapes or attempted escapes from confinement, and attempts of the accused to take his own life.'" *Sorrell v. State*, 315 Md. 224, 228 (1989) (quoting C. McCormick, *McCormick on Evidence* § 271, at 803 (E. Cleary 3rd ed. 1984)) (footnotes omitted).

The Court of Appeals has adapted the *Thompson* factors in cases concerning whether a jury may infer consciousness of guilt from conduct other than flight. *See, e.g.*, *Thomas v. State*, 372 Md. 342, 353 (2002) (*Thomas I*) (requiring a "similar analysis" before a court may admit evidence of the defendant's refusal to give a blood sample in connection with a murder investigation, because the alleged conduct is "analogous" to flight); *accord Thomas v. State*, 397 Md. 557, 576 (2007) (*Thomas II*). Thus, for example, in *Thomas I*, the Court held that the defendant's refusal to give a blood sample was relevant as circumstantial evidence of his guilt, only if the jury could infer:

(1) from his resistance to the blood test, a desire to conceal evidence; (2) from a desire to conceal evidence, a consciousness of guilt; (3) from a consciousness of guilt, a consciousness of guilt of the murder of [the victim]; and (4) from a consciousness of guilt of the murder of [the victim], actual guilt of the murder.

11

*Thomas I*, 372 Md. at 356.

Similarly, the Court of Appeals has asserted that "four sequential inferences" would be required before a jury could infer consciousness of guilt from the defendant's false statements about whether he knew his alleged accomplices:

> "(1) from the defendant's behavior to [lying]; (2) from the [lying] to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."

*State v. Jones*, 466 Md. 142, 155 (2019) (quoting *State v. Simms*, 420 Md. 705, 729 (2011)) (further citations and quotation marks omitted).

Extrapolating from other consciousness-of-guilt cases to this one, it would appear that the court could give the pattern jury instruction concerning destruction or concealment of evidence in this case only if the jury could infer:

> (1) from Rainey's change in appearance, a desire to conceal evidence; (2) from a desire to conceal evidence, consciousness of guilt; (3) from consciousness of guilt, consciousness of guilt of the murder of Dartania Tibbs; and (4) from consciousness of guilt of the murder of Dartania Tibbs, actual guilt of the murder.

Before the court may give a consciousness-of-guilt instruction, the evidence must "support[] a finding of all four inferences." *See Page v. State*, 222 Md. App. at 671.

In response to a question posed by this Court, Rainey argues that the trial court must articulate its evaluation of whether the evidence supports the required inferences. He argues that "meaningful appellate review" is "impossible" unless the court addresses the four inferences enumerated in *Thompson*. In this case, the court did not expressly discuss the *Thompson* inferences before it gave a consciousness-of-guilt instruction.

12

Rainey suggests that, in the absence of some indication that the court considered the inferences, the court may have erroneously failed to exercise any discretion at all. The court's silence, however, does not permit us to conclude that the court was unaware of its obligation to consider the inferences or that the court did not in fact consider them. Trial judges are "presumed to know the law and to apply it properly," *see*, *e.g.*, *Ball v. State*, 347 Md. 156, 206 (1997), "unless we have reason to think otherwise." *Harris v. State*, 458 Md. at 412. Furthermore, there is a "strong presumption that judges properly perform their duties," *Beales v. State*, 329 Md. 263, 273 (1993); and "trial judges are not oblig[ated] to spell out in words every thought and step of logic." *Id.*; *accord Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 426 (2007) (collecting authorities). Thus, in the absence of any indication to the contrary, we proceed from the premise that a trial court knows of the *Thompson* inferences and knows that it may give a consciousness-of-guilt instruction only after it has concluded that the inferences could reasonably be drawn.

We disagree with Rainey's contention that meaningful appellate review is impossible unless the trial court articulates its analysis of the *Thompson* inferences before giving a consciousness-of-guilt instruction. Whether "the evidence is sufficient to permit a jury to find [the] factual predicate" required for a requested jury instruction "is a question of law for the judge." *Page v. State*, 222 Md. App. at 668; *accord General v. State*, 367 Md. 475, 487 (2002) ("[w]hether the evidence is sufficient to generate the requested instruction in the first instance is a question of law"). Thus, even if a trial court detailed its findings about whether the evidence permitted a jury to draw the four

13

*Thompson* inferences, an appellate court would review the question on a *de novo* basis, without deference to the trial court's findings.

In summary, it is ordinarily unnecessary for a trial court to articulate its analysis of the *Thompson* inferences for an appellate court to be satisfied that the trial court did in fact consider them. Nor is it ordinarily necessary for a trial court to articulate its analysis of the *Thompson* inferences in order to facilitate appellate review of its decision. Accordingly, we hold that the trial court did not err in failing to spell out its analysis of the *Thompson* inferences on the record before giving a consciousness-of-guilt instruction.

## C. The court did not err in giving the destruction-of-evidence instruction

The Court of Appeals has recognized that a jury may infer consciousness of guilt if a defendant alters his appearance after the commission of a crime. *See Sorrell v. State*, 315 Md. at 228. Nonetheless, Maryland, unlike many other jurisdictions,[4] has not adopted a pattern jury instruction on that subject.

---

[4] *See, e.g.*, *People v. Brown*, 28 N.Y.S.3d 625, 626 (N.Y. App. Div. 2016) (holding that a consciousness of guilt instruction was warranted by evidence "that after the subject robbery was committed the defendant went home and altered his appearance by changing his clothes before going out again"); *Jackson v. State*, 17 P.3d 998, 1000-01 (Nev. 2001) (holding that a change in appearance instruction was warranted when an incarcerated defendant significantly altered his hairstyle while being transported for a lineup); *Commonwealth v. Carrion*, 552 N.E.2d 558, 566-67 (Mass. 1990) (holding that a consciousness of guilt instruction was warranted when the defendant made false statements, avoided police, and "altered his appearance to conceal evidence – i.e., his physical characteristics"); *Commonwealth v. Holland*, 389 A.2d 1026, 1033 (Pa. 1976) (holding that the trial court did not err in instructing the jury that it could consider evidence that after his arrest the defendant "cut his hair very short and removed the mustache, beard and sideburns" for the first time in "years," as "an indication of consciousness of guilt" if the jury found "as a fact that the defendant has changed his appearance in order to avoid in Court personal identification"); *see also United States v.*

"Appellate courts in Maryland strongly favor the use of pattern jury instructions."

*Minger v. State*, 157 Md. App. 157, 161 n.1 (2004). Perhaps for that reason, the State did not propose a custom instruction to address whether the jury may draw an inference of consciousness of guilt from the defendant's changed appearance. Instead, the State asked the court to give MPJI-Cr 3:26, the pattern jury instruction concerning destruction or concealment of evidence:

> You have heard that the Defendant destroyed or concealed evidence in this case. Concealment or destruction of evidence is not enough by itself to establish guilt, but may be considered as evidence of guilt.
>
> Concealment or destruction of evidence may be motivated by a variety of factors, some of which are fully consistent with innocence. You must first decide whether the Defendant destroyed or concealed evidence in this case. If you find that the Defendant destroyed or concealed evidence in this case, then you must decide whether that conduct shows a consciousness of guilt.

Rainey contends that the circuit court erred in giving that instruction, because, he says, his dreadlocks were not evidence. He distinguishes his physical appearance at the time of the shooting from the photographs that were taken of him at the time of his arrest, which he agrees were evidence. Presumably, he would also agree that the surveillance videos, depicting the dreadlocked assailant, were evidence as well. Citing *Pickett v. State*, 222 Md. App. 322 (2015), he allows that a change in the defendant's appearance,

---

*Perkins*, 937 F.2d 1397, 1403 (9th Cir. 1991) (stating, in dicta, that "when a defendant is known shortly after the commission of a crime to have cut his hair, shaved off facial hair, or changed his hair color, the jury can consider this as evidence of consciousness of guilt and consider it in light of the other evidence in deciding whether the defendant is guilty").

such as a change of hairstyle, may be a proper subject of closing argument. He insists, however, that defendants do not destroy "evidence" by changing their appearances.

The State responds that in some circumstances a defendant's physical attributes may be evidence at trial. The State cites cases in which defendants have been compelled to display a physical trait to the jury or to a witness. *See, e.g.*, *Hopkins v. State*, 352 Md. 146 (1998) (affirming the trial court's decision to compel the defendant to say a phrase aloud at trial); *Doye v. State*, 16 Md. App. 511 (1973) (affirming the trial court's decision to compel the defendant to show his forearm to the jury at trial); *see also People v. Shannon*, 525 N.Y.S.2d 315, 316 (N.Y. App. Div. 1988) (holding that "[t]he trial ruling requiring the defendant to display his tatooed [sic] arms for the witness did not violate his privilege against self-incrimination, since it merely compelled the defendant to exhibit physical characteristics"); *State v. Knoche*, 515 N.W.2d 834, 839 (S.D. 1994) (holding that by showing his tattoo to a witness in accordance with the court's direction, the defendant "merely demonstrated physical characteristics as a source of physical evidence"). The State also cites an Ohio case that rejected a challenge to the prosecutor's comments about the defendant's appearance at trial by stating, "A defendant's face and body are physical evidence." *State v. Brown*, 528 N.E.2d 523, 538 (Ohio 1988). Similarly, the State cites a Virginia case that held that "the fact finder" can determine the defendant's age "based only on the defendant's physical appearance." *Jewell v. Commonwealth*, 382 S.E.2d 259, 261 (Va. Ct. App. 1989). Finally, the State observes that because a jury may compare the appearance of a person on surveillance footage with the appearance of the person sitting at the trial table (*see*, *e.g.*, *State v. Greene*, 240 Md.

16

App. 119, 154-55 (2019), *aff'd*, 469 Md. 156 (2020)), the defendant's physical appearance in the courtroom is evidence as well.

In the comments to MPJI-Cr 3:26, the instruction concerning the concealment or destruction of evidence, the Criminal Subcommittee of the Standing Committee on Maryland Standard Pattern Jury Instructions wrote: "Concealment of evidence, suppression of evidence, alteration of evidence, destruction of evidence, creation of evidence, and bribery or witness intimidation may all be considered admissions by conduct that may demonstrate consciousness of guilt." In support of that proposition, the subcommittee cited, among other cases, *Marshall v. State*, 85 Md. App. 320 (1991). There, the defendant, who was accused of rape, shaved his pubic hair, arguably to prevent the State from taking a sample. *Id.* at 323. On his appeal from his criminal conviction, this Court held that the trial court did not err in admitting that evidence to establish his consciousness of guilt. *Id.* at 325. From their citation to *Marshall*, therefore, it would appear that the drafters of the pattern jury instruction[5] understood the concept of "destruction of evidence" to include cutting one's hair to avoid detection or identification.

We agree that a defendant's physical appearance is, in some sense, "evidence" that the factfinder can consider at trial. It follows that when defendants do something to remove, erase, eliminate, or obliterate some aspect of their physical appearance, they can

---

[5] "[T]he pattern jury instructions are drafted by 'a group of distinguished judges and lawyers who almost amount to a "Who's Who" of the Maryland Bench and Bar.'" *Johnson v. State*, 223 Md. App. 128, 152 (2015) (quoting *Green v. State*, 127 Md. App. 758, 771 (1999)).

17

properly be said to have destroyed or concealed evidence. *See Commonwealth v. Carrion*, 552 N.E.2d 558, 567 (Mass. 1990) (approving the use of a consciousness-of-guilt instruction where "there was some evidence that the defendant's appearance had been altered, from which a jury could draw the inference that he had purposely altered his appearance to conceal evidence—i.e., his physical characteristics"). For example, when a defendant attempts to avoid identification by cutting his hair, shaving his head, moustache, or beard, or having a tattoo removed, it is fair to say that he may have destroyed evidence. Therefore, in a case such as this, where the defendant cut off almost all of his hair and got rid of his distinctive hairstyle, the court would not err or abuse its discretion in giving the destruction-of-evidence instruction, provided that there was "some evidence" to support the required inferences.

Here, there was "some evidence" to support those inferences. The State presented evidence that Rainey was a constant presence on the street before the shooting. A photograph of Rainey, taken two months before the murder, shows him wearing dreadlocks that hung down to his shoulders. Ms. Creighton testified, similarly, that Rainey wore dreadlocks at the time of the murder. The murder occurred on a city street in broad daylight and in plain view of a witness who was visible to the shooter. The witness, Ms. Creighton, recognized the assailant in part because of his shoulder-length dreadlocks. She later identified a photograph of Rainey, wearing dreadlocks, as the person she saw arguing with the victim moments before shots were fired. Rainey abruptly disappeared for a month after the shooting. And when he finally returned, he had his hair cropped closely to the skull instead of shoulder-length dreadlocks.

18

In our judgment, these facts would permit the jury to infer, (1) from Rainey's change in appearance, a desire to conceal evidence; (2) from a desire to conceal evidence, a consciousness of guilt; (3) from a consciousness of guilt, a consciousness of guilt of the murder of Dartania Tibbs; and (4) from a consciousness of guilt of the murder of Dartania Tibbs, actual guilt of the murder. The court, therefore, had the discretion to give MPJI-Cr 3:26, the instruction concerning concealment or destruction of evidence.

In advocating for a contrary conclusion, Rainey relies on *Phillips v. State*, 399 A.2d 315 (N.J. Super. Ct. App. Div. 1979). In that case, the defendant was clean-shaven and short-haired at the time of the crime, but had long hair and a beard at the time of trial. *Id.* at 318. The judge instructed the jurors that they could infer consciousness of guilt from the defendant's change in appearance if they found that he was trying to confuse witnesses or mislead the jury. *Id.* The New Jersey appellate court held that the trial court erred in giving that instruction (though the error was not prejudicial), because "there was no proof at all, other than the change of appearance itself, from which the jury could have made any finding of fact regarding defendant's motive in letting his hair grow or in growing a beard." *Id.* The court did not "regard the change of appearance alone as sufficient to raise an inference supportive of defendant's guilt." *Id.*

This case is a little different. Here, unlike in *Phillips*, the jury did not need to speculate about why Rainey got rid of his dreadlocks; the jury could rely on the State's evidence to infer that Rainey changed his appearance to avoid being identified as the person who shot Dartania Tibbs. This evidence showed that, after Ms. Creighton witnessed a man with long dreadlocks commit a murder in broad daylight on a public

19

street on which there are multiple security cameras, Rainey, who used to spend every day out on that street, disappeared for a month and returned with a dramatically different appearance. This is not a case in which the required inferences depended on "the change of appearance alone."

Rainey also argues that the instruction "presupposed [his] guilt in a case in which criminal agency was the central issue." We do not see how MPJI-Cr 3:26 presupposed Rainey's guilt.

The instruction began by telling the jurors that they had "heard that the Defendant destroyed or concealed evidence in this case." That statement was accurate: the jurors had heard testimony (from Ms. Creighton) and seen photographs establishing that Rainey destroyed or concealed evidence, in the sense that he had cut off his distinctive dreadlocks. The instruction went on to say that "[c]oncealment or destruction of evidence is not enough . . . by itself to establish guilt," but that it "may be considered as evidence of guilt." That statement is also accurate. *See Sorrell v. State*, 315 Md. at 228 (recognizing that consciousness of guilt may be inferred from "shaving off a beard"). The instruction cautioned the jurors that "[c]oncealment or destruction of evidence may be motivated by a variety of factors, some of which are fully consistent with innocence." That statement is accurate as well. The instruction added that the jurors must "first decide whether the Defendant destroyed or concealed evidence in this case." In other words, the instruction accurately informed the jurors that it was up to them to determine whether Rainey had, in fact, destroyed or concealed evidence by cutting off his dreadlocks and cropping his hair. Finally, the instruction told the jurors that "[i]f" they

20

found that Rainey "destroyed or concealed evidence in this case, then [they] must decide whether that conduct shows a consciousness of guilt."

By its terms, this instruction said nothing about whether Rainey was or was not the assailant. Instead, it refers to one aspect of the case (the evidence that Rainey had destroyed or concealed evidence by cutting his hair). It warns the jury that the destruction or concealment of evidence may be evidence of guilt, but is not, in itself, sufficient to establish guilt. In fact, it cautions the jury that the destruction or concealment of evidence may be fully consistent with innocence. It allows the jury to determine whether Rainey did or did not destroy or conceal evidence. It also allows the jury to determine whether to infer consciousness of guilt from the destruction or concealment of evidence. In our judgment, the instruction is substantively correct and is consistent with the requirements of *Thompson*.

Having disposed of that question, we offer one additional comment on MPJI-Cr 3:26. Rainey correctly observes that, in some cases when defendants change their appearance, it is not at all natural to say that they have "concealed" or "destroyed" evidence. If, for example, a defendant grows his hair, dyes his hair, grows a beard or moustache, or gets a tattoo, he has not "destroyed" something in the same way as he would if he had cut off his hair, shaved his head, beard, or moustache, had a tattoo removed, etc. For purposes of this case, however, we need not decide whether defendants can be said to have "concealed" or "destroyed" evidence whenever they alter their appearance in some material way. It will suffice to say that it is preferable, in all cases in which a defendant has allegedly changed his appearance in order to avoid

21

identification, to employ a custom instruction that focuses on the change of appearance as potential evidence of consciousness of guilt.  In those cases, a change-of-appearance instruction is more likely than a destruction-of-evidence instruction to assist the jury in its deliberations.  MPJI-Cr 3:26 could easily be transformed into a change-of-appearance instruction if, for example, the words "destroyed or concealed evidence" were changed to "altered his appearance" and the words "concealment or destruction of evidence" were changed to "altering one's appearance."[6]

**D.  Even if the court erred in giving the instruction concerning concealment or destruction of evidence, the error was harmless**

Assuming for the sake of argument that Rainey did not destroy "evidence" by cutting off his dreadlocks, he would not be entitled to an automatic reversal of his convictions.  Rather, we would reverse the judgments only if we could not say that the putative instructional error was harmless beyond a reasonable doubt.  *See*, *e.g.*, *Hall v.*

---

[6] When a person has destroyed or concealed "evidence," the word "evidence" often means something different from the word "evidence" as it is defined in MPJI-Cr 3:00.  Under MPJI-Cr 3:00, "evidence" is limited to information that is presented to the jury – testimony, exhibits, stipulations, depositions, and facts of which the court takes judicial notice.  But if something of evidentiary value is completely destroyed before the trial even begins, so that the jury never has the chance to consider it, it cannot be "evidence" under the definition in MPJI-Cr 3:00.  Similarly, if something of evidentiary value is concealed so effectively that it is never presented to the jury, it cannot be "evidence" within the meaning of MPJI-Cr 3:00.  For example, if the defendants have shredded all the inculpatory documents and erased the hard drives that contain evidence of their crimes, or hidden all of the documents and hard drives in some inaccessible location, they have undoubtedly destroyed or concealed "evidence" in the ordinary sense of that term; they have not, however, destroyed or concealed "evidence" as that term is defined in MPJI-Cr 3:00, because they have prevented the jury from being able to consider what they destroyed or concealed.  MPJI-CR 3:26 would have little utility if the word "evidence" in that instruction meant the same thing as the word "evidence" in MPJI-Cr 3:00.

22

*State*, 437 Md. 534, 540 (2014). "In order for the error to be harmless, we must be convinced, beyond a reasonable doubt, that the error in no way influenced the verdict." *Weitzel v. State*, 384 Md. 451, 461 (2004). In the circumstances of this case, we are convinced, beyond a reasonable doubt, that, even if the court erred in giving the instruction concerning concealment or destruction of evidence, the error was harmless.

In reaching this conclusion, we begin with the premise that the court could have given a custom instruction that informed the jurors that they could infer consciousness of guilt from Rainey's change of appearance. As explained in section II.C, above, the evidence was sufficient to permit the jury to infer (1) from Rainey's change in appearance, a desire to conceal his identity; (2) from a desire to conceal his identity, a consciousness of guilt; (3) from a consciousness of guilt, a consciousness of guilt of the murder of Dartania Tibbs; and (4) from a consciousness of guilt of the murder of Dartania Tibbs, actual guilt of the murder. Therefore, even if the evidence did not support an instruction concerning the destruction or concealment of evidence, it did support an instruction concerning alteration of appearance.

As this case was presented to the jury, the concept of "destruction of evidence" was synonymous with Rainey's change in appearance: whenever the State talked about drawing an inference of consciousness of guilt from the destruction or concealment of evidence, it was referring to Rainey's change of appearance.

For example, in the State's closing argument, which referred twice to "consciousness of guilt," the prosecutor made it clear that the "destruction of the evidence" referred to Rainey's change in appearance. In the first reference, the

23

prosecutor referred to "consciousness of guilt[]" just before he showed the jury a picture of Rainey, with shoulder-length dreadlocks, in March 2017. In the second reference, just a moment later, the prosecutor said:

> So why is it right after the murder in June of 2017, it's all gone? That's what the lawyers call a consciousness of guilt.

From this record, we infer that when the court instructed the jurors about the inferences that they could draw from the destruction or concealment of evidence, the jurors undoubtedly understood the court to be referring to the inferences that they could draw from Rainey's alteration of his appearance. In substance, therefore, the instruction in this case operated exactly like the instruction that the court could have properly given. Consequently, if the court erred in giving the destruction-of-evidence instruction in MPJI-Cr 3:26 rather than the custom change-of-appearance instruction that the court could have given, the error was harmless beyond a reasonable doubt. Because the jury would have understood "destruction of the evidence" to mean "alteration of appearance," Rainey was not harmed by the trial court's error, if any.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

24