166 N.J. Super. 153 (1979)
399 A.2d 315
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES PHILLIPS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 5, 1979.
Decided February 28, 1979.
*156 Before Judges CONFORD, PRESSLER and KING.
Mr. Stanley C. Van Ness, Public Defender, attorney for the appellant (Mr. William S. Singer, Designated Attorney, of counsel and on the brief).
Mr. John J. Degnan, Attorney General of New Jersey, attorney for the respondent (Mr. Frederick S. Cohen, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant James Phillips was convicted by a jury of conspiracy to commit robbery and armed robbery. He was sentenced to an aggregate term of 17 to 23 years in State Prison. He predicates this appeal on essentially two claims of error below. He argues first that three items of State's evidence should have been excluded because of the prosecutor's violation of his discovery obligation in respect thereof. He further argues that the judge's charge to the jury was prejudicially erroneous in two respects.
The factual theory of the State's case was that on December 9, 1974 Phillips and his codefendant, wearing ski masks and carrying sawed-off shotguns, held up a bank in Paterson. Several others had allegedly participated in the conspiracy to commit this crime, both in its planning stage and in its execution, one of whom, Betty Jean Davis, was the State's primary witness. Ms. Davis agreed to testify for the State only because of a promise by federal authorities that she and her children would be relocated and given new identities. Her testimony regarding the events leading up to the commission of crime, its carrying-out and the sharing of the proceeds therefrom inculpated defendant as one of key participants. Her testimony was corroborated by her neighbor, a Ms. Bell, who had knowledge of the use of Ms. *157 Davis' apartment by the conspirators the night before the robbery. Ms. Davis' testimony as to modus operandi was further corroborated by the testimony of two employees of the bank, and testimony by law enforcement officers regarding the investigation of the vehicles used in the hold-up corroborated other details of Ms. Davis' story. Defendant offered no proofs at all on his own behalf. We are satisfied from this record that defendant's guilt of the crime was overwhelmingly established.
The three pieces of evidence of which the defendant complains are (1) the testimony of Ms. Bell, (2) an oral statement made by defendant to the officer who transported him to headquarters following his arrest, and (3) a threatening letter received by Ms. Davis while she was in custody, introduced by the prosecutor during redirect examination and in further corroboration of her motive for testifying. The basis of defendant's objection to the first two of these evidential matters is that the prosecutor, in violation of the discovery orders entered pursuant to R. 3:13-3(a) and (f), improperly withheld from defendant his intention to call Ms. Bell and to introduce proof of defendant's statement. His objection to the threatening letter is that the prosecutor failed to inform him at all of its existence.
We are satisfied that defendant's objections to the admission of Ms. Bell's testimony and defendant's own oral statement are patently without merit. The prosecutor's failure, if any, to comply with his discovery obligations in respect of Ms. Bell were technical rather than substantive. The materials which the prosecutor did in fact furnish to defendant pursuant to the pretrial discovery orders herein entered were adequate to advise defendant both of the substance of Ms. Bell's anticipated testimony and her availability as a State's witness. See R. 3:13-3(a) (7). The prosecutor also furnished to defense counsel a writing containing the substance of defendant's oral statement, the import of which was that he knew nothing about any bank robbery and had never been in Paterson. We do not agree *158 with defendant's contention that the prosecutor was further obliged to advise defense counsel in advance of trial of his intention to use that statement on the State's case. See R. 13:13-3(a)(2).
While we agree with defendant that he was given no advance notice of the existence of the letter threatening Ms. Davis, we do not agree that the State, as a consequence thereof, was necessarily precluded from using the letter in the manner it did, namely, on redirect examination of Ms. Davis and as further evidence of her motive for testifying. We are aware of the holding of State v. Spano, 69 N.J. 231, 235 (1976), requiring the State to disclose to defendant "information it possesses which is material to the defense, even where it concerns only the credibility of a State's witness." (Emphasis supplied). That holding was, however, based on the prosecutor's duty to disclose exculpatory material  a duty imposed not by the discovery rules but by the constitutional principles enunciated by the United States Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We consequently construe the Spano caveat in respect of materiality as excusing the prosecutor's nondisclosure where, as here, the information does not have an inherent capacity to undermine the credibility of a State's witness and is, moreover, introduced on redirect examination only in response to the defendant's effort on cross-examination to impeach credibility. While the prosecutor would have been better advised to have furnished this document to the defense, we are persuaded that since it did not constitute information material and favorable to defendant's cause, his use thereof, in context, did not result in harmful error. See State v. Carter, 69 N.J. 420, 432-433 (1976).
Defendant's first objection to the charge to the jury relates to the manner in which the judge recapitulated the evidence. We find that portion of the charge to have been neither misleading to the jury, nor intrusive of defendant's right to remain silent. It was fair and unobjectionable.
*159 The second objection to the charge is, however, not without merit. There was evidence adduced on the State's case that defendant at the time of the robbery was clean-shaven and short-haired. At trial, some six months later, his hair was long and he wore a beard. The judge, in referring to this apparent change in appearance, charged the jury as follows:
Now, all persons have a right to let their hair grow and to grow a beard. If, however, such changes of appearance are made in an attempt to confuse witnesses or to confuse the jury such actions should be taken into consideration by the jury since such an action may show a consciousness of guilt. Here too you have a question of fact to be determined. If you find that the defendant Phillips fearing that a convincing identification would be made of him by the various witnesses changed his appearance for the purpose of confusing the witnesses or misleading the jury then you may consider such changes in connection with all the other evidence in the case and as an indication or proof of consciousness of guilt. If you find that the defendant Phillips let his hair grow in order to adopt a new style or for some other innocuous reason then you may consider that as a circumstance which may tend to show an absence of consciousness of guilt and which should be weighed by you with all the evidence in the case. A change of appearance after a crime has been charged does not warrant an inference of guilt. There may be facts entirely legitimate connected with a change of appearance which would not support such an inference at all. For a change to be suspicious there must be circumstances present which in conjunction with the change reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid a positive identification.
The patent defect in the charge is that there was no proof at all, other than the change of appearance itself, from which the jury could have made any finding of fact regarding defendant's motive in letting his hair grow or in growing a beard, and we do not regard the change of appearance alone as sufficient to raise an inference supportive of defendant's guilt. We recognize the well-established principle that certain conduct of a defendant subsequent to the commission of a crime may indicate his consciousness of guilt. Such conduct may, therefore, be probative as to the *160 ultimate question of guilt and may be properly commented on by the trial judge. See, generally, 2 Wigmore on Evidence (3 ed. 1940), § 273 at 106-109. In our view, however, that rule applies only to such conduct as is intrinsically indicative of a consciousness of guilt, such as unexplained flight, or an unusual exhibition of remorse for the victim of the crime, or the switching of clothes while a cellmate before a lineup. See, respectively, State v. Mills, 51 N.J. 277, 286 (1968), cert. den. 393 U.S. 832, 89 S.Ct. 105, 21 L.Ed.2d 104; State v. Sowards, 99 Ariz. 22, 406 P.2d 202, 204 (Sup. Ct. 1965). It does not apply to conduct which, as here, is frequently engaged in by substantial numbers of people and which can be interpreted as self-inculpatory only by permitting the jury to speculate, unaided by any evidential base, as to defendant's motive in so conducting himself.
We are not, however, persuaded that this error in the charge was harmful. The record, as we have noted, overwhelmingly supports the conclusion of defendant's guilt and considered both in the context of the charge as a whole and the trial as a whole, we are convinced that this portion of the charge clearly had neither any capacity to affect nor any likelihood of having affected the jury's deliberations on the ultimate question of guilt. State v. Macon, 57 N.J. 325 (1971).
Affirmed.