745 A.2d 494

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RAME PEPSHI, DEFENDANT–APPELLANT.

Argued October 25, 1999—Decided December 16, 1999.

*Kevin G. Byrnes,* Designated Counsel, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney).

*Joseph Connor, Jr.,* Assistant Prosecutor, argued the cause for respondent (*John B. Dangler,* Morris County Prosecutor, attorney).

*Melaney S. Payne,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*John J. Farmer, Jr.,* Attorney General, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns the meaning of silence. In some circumstances it is said that "silence speaks louder than words." *In re Young,* 91 *F*.3d 1367, 1375 (10th Cir.1996). The silence here concerns the passive reaction by a group of motorists to a high-risk stop of their vehicle by the police. The motorists were in fact a somewhat inept, but no less dangerous, ethnic gang. They had bungled an attempt to break into a nearby supermarket. A tripped burglar alarm brought police to the scene. The police saw a vehicle leaving and alerted patrol units to be on the lookout for the escaping vehicle. A patrol unit spotted a vehicle coming in the opposite direction. Because of the lateness of the hour, no other vehicles were on the road. The officer put his patrol car in the path of the oncoming car and forced it to stop. He ordered the motorists out of the car and arrested the occupants, one of whom was defendant.

At the station house, one of the suspects said that they were coming from Chicago and had left the highway in order to get gas. Investigative records disclosed that the car had been stopped and

searched in New York just the day before. They could not have been in Chicago. New York police had found sledgehammers, crowbars, saws, chisels, and other suspicious tools in the car. A vehicle owned by one of the suspects was found the next day at a nearby supermarket. That car contained similar tools. When the beeper seized in the getaway car was activated, it led the police to another member of the gang whose footprints fit the footprints found at the scene of the crime. The case against the suspects was almost airtight.

At trial, over defendant's objection, the arresting officer described the motorists' reaction when arrested. According to the officer, "they had no real reaction. There was no questions being asked...." Defendants had objected on the basis that they were in police custody and had a constitutional right to remain silent that was infringed upon by the comment.

In an unreported opinion, the Appellate Division affirmed defendant's conviction and the admission of the officer's statement. In its opinion, it wrote:

> Defendant's silence was admitted as proof that he had a guilty mind at the time of the stop because he did not inquire as to the reason for the stop or express any shock or surprise. Moreover, defendant's silence was not in response to custodial questioning which would have triggered defendant's Fifth Amendment Rights. "[E]vidence of pre-arrest silence, particularly in the absence of official interrogation, does not violate any right of the defendant involving self-incrimination." *State v. Brown*, 118 *N.J.* 595, 613, 573 *A.2d* 886 (1990).

> Defendant's silence and nonreaction was not evidence of a refusal to speak or an assertion of a right to remain silent, but evidence of an indifference to his arrest and an acceptance of draconian conduct. This behavior bespeaks knowledge of why it was happening. His conduct was "intrinsically indicative of a consciousness of guilt." *State v. Phillips*, 166 *N.J.Super.* 153, 160 [399 *A.2d* 315] (App.Div.1979), *certif. denied*, 85 *N.J.* 193 [426 *A.2d* 38] (1980[1981]) Defendant's right to remain silent was not implicated in the admission of this evidence.

█ The inference suggested is that law-abiding people would if innocent, naturally protest the police treatment. We are not so certain that emigres from eastern Europe (as were the members of this group) would have been so naturally inclined as would a suburban couple returning from the theater. Their life experi-

ences might have made them less spontaneous in encounters with security forces.

■ The cases cited by the Appellate Division do not sustain its thesis. "In most circumstances silence is so ambiguous that it is of little probative force ..." *United States v. Hale,* 422 *U.S.* 171, 176, 95 *S.Ct.* 2133, 2136, 45 *L.Ed.*2d 99, 104 (1975).[1]

■ *Brown, supra,* held that "once a defendant chooses to take the stand in his or her own defense pre-arrest silence has a bearing on the credibility of the defendant." 118 *N.J.* 595, 573 *A.*2d 886 (1990). In that case we stated that

[i]f it can be inferred by the fact-finder that a reasonable person situated as the defendant, prior to arrest, would naturally have come forward and mentioned his or her involvement in the criminal episode, particularly when this is assessed against the defendant's apparent exculpatory testimony, then the failure to have done so has sufficient probative worth bearing on defendant's credibility for purposes of impeachment.

[*Id.* at 613, 573 *A.*2d 886.]

*State v. Phillips, supra,* emphasized that its:

rule applies only to such conduct as is intrinsically indicative of a consciousness of guilt, such as unexplained flight, or an unusual exhibition of remorse for the victim of the crime, or the switching of clothes while [sic] a cellmate before a lineup. It does not apply to conduct which, as here, is frequently engaged in by substantial numbers of people and which can be interpreted as self-inculpatory only by permitting the jury to speculate, unaided by any evidential base, as to defendant's motive in so conducting himself.

[166 *N.J.Super.* at 160, 399 *A.*2d 315 (citations omitted).]

■ Although, then, we disagree with the generalizations that indifference to arrest or acceptance of draconian conduct are indicative of a consciousness of guilt, we are satisfied that those mischaracterizations engendered no fundamental violation of fair trial rights here, especially in light of the overwhelming evidence of guilt and the innocuous nature of the testimony. There was

---

[1] It is true that "[s]ilence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation," *Hale, supra,* 422 *U.S.* at 176, 95 *S.Ct.* at 2136, 45 *L.Ed.*2d at 104, but no accusations had been made when the reaction took place.

only the single reference to the suspect's reaction to arrest. No further inference of guilt was suggested by court or counsel. The question and answer were harmless. The Appellate Division found no merit in the remaining issues raised and those issues do not require comment.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG and VERNIERO—7.

*Opposed*—None.