# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0859-23

IN THE MATTER OF THE
COMMITMENT OF K.W.

_____

Argued January 29, 2025 – Decided April 10, 2025

Before Judges Currier, Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Morris County.

John W. Kaveney argued the cause for appellant AHS Hospital Corp., d/b/a Atlantic Health System, Chilton Medical Center (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; John W. Kaveney and John Zen Jackson, on the briefs).

Jesse M. DeBrosse, Assistant Deputy Public Defender, argued the cause for respondent K.W. (Jennifer N. Sellitti, Public Defender, attorney; Lorraine Hunter Hoilien, Deputy Public Defender, and Jesse M. DeBrosse, of counsel and on the brief).

PER CURIAM

Appellant, AHS Hospital Corp. d/b/a Atlantic Health System, Chilton Medical Center (Hospital), appeals from a municipal court order denying its

request to extend the time it could involuntarily hold a patient beyond the timeframes established under N.J.S.A. 30:4-27.9a. Because we conclude the municipal court judge correctly applied the statute in denying the extension, and we decline to use our parens patriae power to override the statute, we affirm.

At the outset we address two issues concerning our review. First, the Hospital acknowledges this appeal has been "rendered technically moot" because K.W. was "transferred to an appropriate psychiatric facility." Second, K.W. argues, on the merits, the Hospital failed to satisfy the statutory requirements to extend the timeframe.

"Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010). "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). "Ordinarily, our interest in preserving judicial resources dictates that we not attempt to resolve legal issues in the abstract." Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996).

"On occasion, however, we will decide such appeals where the underlying issue is one of substantial importance, likely to reoccur but capable of evading review." Ibid. We conclude the involuntary hold of patients is of substantial importance and, because this situation could reoccur, but be resolved through placement before review, we consider the appeal.

As to K.W.'s factual argument on the merits, we decline to consider those issues. While the municipal court judge may have considered the merits—"the [H]ospital[ made a] diligent search for an appropriate transfer placement"—its conclusion was a pure legal one under the statute, "[t]he Legislature did not provide any further discretion on the part of the [c]ourt to extend the time further."

Therefore, our opinion focuses solely on the language of the statute. "In matters of statutory interpretation, our review is de novo." Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017) (citing Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) ("noting that interpretation of statute is 'question of law subject to de novo review' on appeal")).

N.J.S.A. 30:4-27.9a provides:

> (b) . . . a general hospital, including any satellite emergency department of a general hospital, where a person is located during a screening outreach visit, may not detain the person for more than [seventy-two] hours

3

from the time a screening certificate is executed, unless the hospital or emergency department obtains a temporary court order permitting the continued hold of the person for up to [seventy-two] additional hours, as determined by the court. The hospital or emergency department may submit an emergent application for such order and continue to hold the person during the pendency of the application, provided that appropriate treatment that meets the standard of care is being rendered to the person. The Office of the Public Defender shall be notified of the emergent application, provided with a copy of the application and all supporting documents, and shall be appointed as counsel to represent the patient . . . .

(2) The court may grant a temporary order granting the continued hold of a person upon an application . . . if the hospital or emergency department:

> (a) exhausted all reasonable efforts to place the individual in a short-term care or psychiatric facility, or special psychiatric hospital, depending on which facility is appropriate for the person's condition and is the least restrictive environment; and

> (b) demonstrates that there is a substantial likelihood that, by reason of mental illness, the person will be dangerous to the person's own self or others based upon the certification of two psychiatrists who have examined the patient and deemed the patient is in need of involuntary commitment.

[(Emphasis added).]

4

The New Jersey Supreme Court has explained the courts' role in statutory interpretation. The

> "overriding goal has consistently been to determine the Legislature's intent." Young v. Schering Corp., 141 N.J. 16, 25 (1995) (quoting Roig v. Kelsey, 135 N.J. 500, 515 (1994)). In doing so, "we need delve no deeper than the act's literal terms." State v. Gandhi, 201 N.J. 161, 180 (2010) (quoting State v. Thomas, 166 N.J. 560, 567 (2001)). Put another way, "[w]here a statute is clear and unambiguous on its face . . ., a court must infer the Legislature's intent from the statute's plain meaning." O'Connell v. State, 171 N.J. 484, 488 (2002). We will "neither rewrite a plainly[ ] written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." Ibid. . . .
>
> Our first step in interpreting a statute is to look to "the actual words of the statute, giving them their ordinary and commonsense meaning." State v. Gelman, 195 N.J. 475, 482 (2008). "If the plain language leads to a clear and unambiguous result, then the interpretive process should end . . . ." State v. D.A., 191 N.J. 158, 164 (2007).
>
> [Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 260-61 (2020) (first and third alteration in the original).]

Applying these well-established principles, we are convinced the Legislature's use of the phrase "up to" is intended to limit the number of hours beyond the initial seventy-two hours a patient can be detained. The plain meaning of the phrase is a "function word to indicate a limit or boundary." See Merriam-

Webster's Collegiate Dictionary 1376 (11th ed. 2020) (defining "up to"). Therefore, a court cannot extend the hold beyond the limit of seventy-two hours after the first seventy-two-hour period provided in the statute.

In addition, the statutory language limits the court to "grant a temporary order." N.J.S.A. 30:4-27.9a. In using the word "a," the Legislature intended for a single, "temporary order," rather than multiple "temporary order[s]." Ibid. The plain language of the statute undermines the notion that a court can continue to order extensions beyond the statutory timeframe.

Therefore, based on the clear language of the statute, courts are limited to granting one additional temporary order for seventy-two hours. In this respect, we find no error with the municipal court judge's order denying the Hospital's request to extend K.W.'s hold beyond the limited statutory timeframe.

Indeed, the Hospital does not argue the statute allows more than one seventy-two-hour extension. Instead, the Hospital argues the statute's "silen[ce] regarding what should happen beyond" the 144-hour timeframe leaves it "with a Hobson's choice as to what to do with the [p]atient."[1] The Hospital explains:

> [i]f [it] continues to hold the [p]atient, it can be accused
> of holding a patient without a legal right to do so.

---

[1] Our Supreme Court described a Hobson's choice as having "no choice at all." N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145, 151 (2010).

A-0859-23

However, if the [H]ospital releases the [p]atient (who has been determined to be an imminent risk of harm to himself or others), the action could be questioned as an unsafe discharge and violation of the [H]ospital's legal obligations or open the [H]ospital up to potential liability should the [p]atient harm himself or someone else upon release.

Therefore, the Hospital argues we should "exercise [our] police power to protect the citizenry and [our] parens patriae authority to act on behalf of those unable to act in their own bests interests," citing In re S.L., 94 N.J. 128, 136 (1983); and "use the parens patriae authority of the State and its police power to ensure that those requiring civil commitment are not cast adrift into the community while they present an imminent danger to themselves or others simply because a bed cannot be located within 144 hours."[2][3]

---

[2] "Parens patriae refers to 'the state in its capacity as provider of protection to those unable to care for themselves.'" Hojnowski v. Vans Skate Park, 187 N.J. 323, 333 (2006) (quoting Black's Law Dictionary 1144 (8th ed. 2004)).

[3] It is not clear if this argument was presented to the municipal court judge. Ordinarily, we "decline to consider questions or issues not properly presented . . . when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). We are satisfied involuntary patient holds "concern matters of great public interest," ibid., and therefore consider the argument.

A-0859-23

The Hospital relies on S.L., for the proposition that "despite limiting statutory language and guidance regarding the right to involuntarily commit and hold a patient," the New Jersey Supreme Court "fashioned a necessary remedy that created an equitable and just outcome for the protection of the patients and the public."

The Hospital asserts that patients' due process rights are protected because "[a]ny request for additional time to hold a patient is substantiated by an application to the court, with evidence substantiating the efforts made to locate a bed and the continued assessment of the patient as a danger to himself or others." In addition, "during the entire process the patient is represented by counsel from the Office of the Public Defender."

K.W. argues the statute was passed after the Legislature heard from hospital and patient advocates. He suggests, "[n]either patient advocates, . . . nor hospital advocates, . . . were entirely happy. But that is democracy." He notes the legislation will "sunset" in August 2025, and "will be studied by two agencies," the Department of Human Services and the Department of Health.

The Hospital acknowledges the legislative tension. It notes "efforts to include language in prior versions of [the statute] to permit applications for holds longer than 144 hours . . . was rejected in prior drafts of the bill." In

addition, it notes "prior versions of the bill includ[ed] language that expressly capped the amount of time a patient could be detained to no more than 144 hours and that language was also left out of the final bill."

Substantively, K.W. argues the statute "allows a narrow departure from the [seventy-two]-hour timeframe for transfer." Further, he notes the statute in multiple places provides "that patients may be detained 'for no more than [seventy-two] hours.'" In addition, K.W. asserts that the statutory language "limits the detention of a patient" "for up to [seventy-two] additional hours." Thus, the statutory language makes "no provision for further extension." He argues "[t]o safeguard the rights of patients, our system requires meticulous adherence to statutory and constitutional procedures—including the time limits for action."

K.W. argues that our use of parens patriae "to override a specific statutory limit . . . would tread on the democratic structure of our government." He argues the courts' role is to "determine whether the statute is 'rationally related to the achievement of a legitimate state interest,'" quoting Barone v. Department of Human Services, 107 N.J. 355, 365 (1987). Alternatively, K.W. contends, the courts' role "is not a license . . . to judge the wisdom, fairness, or logic of legislative choices, and it does not empower the judiciary to act as a super-

legislature, judging the wisdom or desirability of legislative policy," quoting A.A. v. State, 384 N.J. Super. 481, 496 (App. Div. 2006).

K.W. contends the Hospital's reliance on S.L. is misplaced, because there, the Court was confronted with a "legislative vacuum"—as the patients' "status . . . was not formally recognized by any statute, administrative regulation or court rule." K.W. argues, here "there is no legislative vacuum" and instead, "[t]he Hospital effectively wants to appeal the Legislature's denial of an indefinite period of time in which to transfer psychiatric patients to treatment facilities."

In considering the Hospital's argument, we start with the statute—the Legislature permitted one temporary court order that allows a hospital to hold a patient for an additional seventy-two hours. Although the Hospital claims the statute is silent regarding the period after the additional seventy-two hours, we note "[i]n some circumstances . . . 'silence speaks louder than words.'" State v. Pepshi, 162 N.J. 490, 491 (1999) (quoting In re Young, 91 F.3d 1367, 1375 (10th Cir. 1996)). In other words, the Legislature was not silent regarding the time after the additional seventy-two hours; instead, it did not provide for any time after that additional time.

The Hospital, urges us to step in and use our parens patriae power to judicially craft an amended statute that would permit it to hold a patient beyond the statutory timeframe. We decline the Hospital's invitation for a number of reasons.

First, the Hospital fails to explain why the judiciary, and not the Legislature, is better suited to address this issue. "The Legislature, and not the court, is the proper place for policy arguments given that courts are not charged with passing judgment 'on the wisdom of the legislative enactment, but only on its meaning.'" Petro v. Platkin, 472 N.J. Super. 536, 570 (App. Div. 2022) (quoting Cnty. of Bergen Emp. Benefit Plan v. Horizon Blue Cross Blue Shield of N.J., 412 N.J. Super. 126, 138-39 (App. Div. 2010)). "'[I]mprovident decisions will eventually be rectified by the democratic process' and 'judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.'" Ibid. (alteration in original) (quoting Vance v. Bradley, 440 U.S. 93, 96-97 (1979)).

Second, "[t]he judiciary should not venture into fields better explored by the Legislature . . . ." Matter of Adoption of a Child by E.T., 302 N.J. Super. 533, 544 (App. Div. 1997) (Humphreys, J., concurring) (citing Burton v. Sills, 53 N.J. 86, 95 (1968) ("Courts should not act as a 'superlegislature' as to matters

11

of 'legislative rather than judicial concern.'")); see also White v. Twp. of N. Bergen, 77 N.J. 538, 554-55 (1978) ("the wisdom, good sense, policy and prudence (or otherwise) of a statute are matters within the province of the Legislature and not of the Court.").

Third, "[l]egislative rather than judicial consideration of important public policy issues has many advantages." Ibid. As happened here, "[i]nterested parties and organizations [we]re afforded the opportunity to express their views and provide information to the Legislature." Ibid. "Having the benefit of such a wide expression of views and information, should enable the Legislature to make a better and more informed decision than a court." Id. 544-45.

We by no means minimize the Hospital's "Hobson's choice," but we also recognize the legislation sunsets soon, and the Legislature required "each general hospital and emergency department [to] prepare and submit to the Department of Human Services . . . quarterly report[s]," to address their experience under the statute. Therefore, the Legislature is primed to address any change it may deem necessary.

We address one other issue. The Hospital argues that N.J.S.A. 30:4-27.9a is preempted by the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd. The Hospital contends that its adherence to

12

N.J.S.A. 30:4-27.9a could expose it, in some future litigation, to liability under EMTALA. This issue is raised for the first time on appeal. Therefore, we decline to consider it. See Nieder, 62 N.J. at 234. Futhermore, the issue did not occur in this matter, is speculative, and seems to request an advisory opinion. Our courts generally decline to answer abstract questions or issue advisory opinions. See G.H. v. Twp. of Galloway, 199 N.J. 135, 136 (2009).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0859-23